**Warren J. KING et al., Appellants,**

v.

**BOARD OF REGENTS, CLAREMORE JUNIOR COLLEGE and Richard H. Mosier, et al., Appellees.**

**No. 47191.**

Supreme Court of Oklahoma.

Oct. 14, 1975.

Jesse D. Swift, Tom Lucas, Swift & Phillips, Sand Springs, for appellants.

Larry Derryberry, Atty. Gen., Joe C. Lockhart, Asst. Atty. Gen., Oklahoma City, for appellees.

BERRY, Justice:

Plaintiffs brought class action requesting declaratory judgment that termination of their employment was null and void. The trial court granted relief to one plaintiff. Plaintiffs appeal.

Prior to June 30, 1972, plaintiffs were employed as instructors at Claremore Junior College [formerly Oklahoma Military Academy]. The school exists pursuant to 70 O.S.1971 §§ 3801–3806. Section 3802 creates a Board of Regents, and § 3806 grants the Board supervision, management, and control of the school, including authority to establish and maintain plans for tenure of employees.

During February, 1972, the Board appointed Dr. Richard Mosier to become President of the school effective July 1, 1972. It authorized him to use title President-Elect during interim, and hired him

as consultant to make recommendations concerning retention of faculty for 1972–1973 academic year. A member of the Board testified Dr. Mosier was not authorized to hire and fire, but could have understood he had such authority.

On March 27, 1972, the Board rescinded existing tenure policy [the 1970 Tenure Policy] effective July 1, 1972. On August 16, 1972, it adopted a Faculty Security Policy to be effective as of July 1, 1972.

During April, 1972, Dr. Mosier wrote letters to 12 of the school's 33 faculty members including plaintiffs herein, notifying them that their contracts would not be renewed for 1972–1973 academic year. Four of the 12 had previously acquired tenure pursuant to the 1970 Tenure Policy, and 8 were "non-tenured" instructors.

The letters stated various reasons for non-retention, including references to "limited resources", "best interests of the total institution", and ability to retain "another better qualified person for the position."

On May 4, 1972, the Board voted to accept Dr. Mosier's recommendation with respect to non-tenured instructors.

The present action was filed on May 9, 1972. On August 23, 1973, the trial court rendered judgment finding non-tenured instructors were hired on annual contract basis with no vested right to re-employment, and therefore their rights were not violated when the school failed to renew their contracts.

On appeal the non-tenured instructors contend:

"The non-tenured professors should likewise have received their day in Court with a declaration of their rights to minimal due process and they should have been afforded a proper notice in writing stating cause from the Board of Regents on or before April 10, of the academic year as a bare minimum."

In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, the United States Supreme Court considered a similar contention. The court recognized procedural due process only requires notice of reasons, and opportunity for hearing, to be furnished non-tenured instructor when decision not to rehire him deprives him of an interest in liberty or property protected by the 14th Amendment, U.S.Const.

The court held decision not to rehire non-tenured instructor would not deprive him of an interest in liberty unless it was in retaliation for instructor's exercise of constitutional rights, or the state in declining re-employment either (1) imposed a stigma or disability upon him which foreclosed his ability to take advantage of other employment opportunities, or, (2) make a charge against him which might seriously damage his standings and associations in his community, for instance, charges of dishonesty or immorality. See also *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570.

In the present case there was no evidence indicating non-tenured instructors were denied re-employment in retaliation for exercise of constitutional rights; that charges were made against them which might seriously damage their standing and association in the community; or that refusal to re-employ imposed a stigma, or other disability which foreclosed their freedom to take advantage of other employment opportunities. We conclude the Board's decision not to re-employ the non-tenured instructors did not deprive them of their liberty.

In *Board of Regents v. Roth, supra,* the Supreme Court stated that to have a property interest in a governmental benefit [here re-employment] one must "have a legitimate claim of entitlement to it."

The court further stated:

"Property interests * * * are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules and understandings that secure certain benefits and that support claims of entitlement to those benefits."

The 1970 tenure policy remained effective until July, 1972. It contained the following provision concerning non-tenured instructors:

"During his first four years * * * the professor shall be in probationary status and subject to release at the end of any semester of his probationary period. Dismissal may be appealed to the President * * * who will request the Academic Council to review the case and make a recommendation. The President will then notify the dismissed professor in writing of his decision, which shall be considered final."

Plaintiffs' argument is apparently that school had adopted policy requiring notice of non-renewal to be given prior to April 10; they were not given notice of non-renewal prior to that date; and they therefore had right to employment for 1972–1973 school year.

In *Papadopoulos v. Oregon State Board of Higher Ed.*, 14 Or.App. 130, 511 P.2d 854, the court considered a regulation requiring notice of non-renewal to be given before specified date and stated:

"The effect of this regulation is to entitle the * * * employees to continued employment unless and until they receive timely notice of termination in accordance with the requirements of the regulation."

See also *Zimmerman v. Minot State College*, N.D., 198 N.W.2d 108; *Pima College v. Sinclair*, 17 Ariz.App. 213, 496 P.2d 639; *Loebeck v. Idaho State Bd. of Ed.*, 96 Idaho 459, 530 P.2d 1149.

Assuming the principle expressed in those cases is correct, the issue presented in present case is whether there were rules and understandings promulgated and fostered by state officials which entitled non-tenured instructors to notice of non-renewal prior to April 10.

Plaintiffs cite no applicable statutes requiring notice of non-renewal to be given before April 10, and there was no evidence the Board had adopted any rule, regula-

tion, or policy requiring such notice. Neither the Faculty Handbook in effect at the time, nor prior contracts executed by the non-tenured instructors, provided for such notice.

Plaintiffs apparently contend the school had informally adopted such a policy.

There was evidence new instructors were told the school followed notice standards adopted by the American Association of University Professors. These standards provide non-tenured instructors will be notified of non-renewal before March 15 during first year of employment, before December 15 during second year, and 12 months in advance during subsequent years.

Mr. Thorpe, who was Dean of the college from 1969 until 1972, testified that in 1970 the school adopted the AAUP notice standards "in practice." He furnished copies of the standards to new faculty members but did not advise them such standards were a matter of legal right, or that their contracts would be renewed if notice provisions were not complied with.

He also testified the school once maintained a high school and gave notice of non-renewal to college instructors at the same time it gave notice to high school instructors. After the high school was phased out, the school continued to attempt to give sufficient notice to allow instructors to seek employment elsewhere.

Plaintiffs cite notice provisions of School Code of 1970 [70 O.S.1971 § 1–101 et seq.]. Section 6–101(E) provides teachers are deemed employed for ensuing fiscal year on a continuing contract basis unless they are given notice of non-renewal prior to April 10. Plaintiffs concede the School Code of 1970 is not applicable to Claremore Junior College, but apparently contend above cited testimony indicates the school had informally adopted policy of giving notice of non-retention at time it must be given to high school teachers.

The trial court found estoppel is not applicable to the state and fact new instruc-

tors were furnished copy of AAUP notice provisions did not work an estoppel against state.

We note plaintiffs' exhibit 31 was letter notifying non-tenured faculty member of re-employment for school year 1971–1972. It is dated April 29, 1971, and states:

"In accordance with the * * * Tenure Policy of * * * 1970, I must notify all non-tenured professors of their status regarding the next academic year."

Mr. Thorpe testified similar letters were mailed to all non-tenured faculty members during April, 1971.

■ This indicates the school was not following the AAUP notice guidelines, or the notice provisions of 70 O.S. § 6–101(E), *supra*. We conclude the school had not adopted policy of giving notice of non-renewal prior to April 10. Therefore, we conclude trial court's finding that rights of non-tenured teachers were not violated, and that they were not entitled to reinstatement, is supported by competent evidence.

It is conceded that Mr. King, Mr. McLaughlin, Mr. Burruss and Mr. Deaton had acquired tenure pursuant to the 1970 tenure policy prior to time Dr. Mosier attempted to discharge them.

The 1970 tenure policy provided tenured instructors would be considered permanent members of the college faculty and could only be dismissed for cause as defined therein. It provided for written notice, hearing and administrative appeal with Board of Regents to make final decision.

This tenure policy remained effective until July 1, 1972. However, in the present case neither the school nor the instructors attempted to follow procedure specified therein. In April, 1972, Dr. Mosier wrote the instructors letters notifying them their contracts would not be renewed for the 1972–1973 academic year. The instructors were not given notice of cause for dismissal as contemplated by 1970 tenure policy, and no hearing was scheduled.

On May 4, 1972, the Board of Regents approved Dr. Mosier's recommendation with respect to Mr. King because it did not know Mr. King had tenure. It took no action with respect to other tenured instructors pending receipt of opinion from Attorney General.

On May 28, 1972, an Assistant Attorney General advised Board it had obligation to either offer the four instructors contracts for the 1972–1973 academic year, or to refuse to employ them for cause.

By letter dated June 29, 1972, the school offered the four instructors contracts for the 1972–1973 school year.

■ The trial court found the instructors were not denied tenure rights because the Board offered them contracts for the 1972–1973 academic year. We agree.

There is some confusion concerning how Board's act of rescinding 1970 tenure policy affected instructors who had acquired tenure prior to 1972. The provisions of the contracts offered them may have conflicted to some extent with rights they had acquired under prior tenure policy.

However, Mr. Deaton testified he did not respond to the offer of contract for 1972–1973, but took early retirement. He testified he did not accept the offer because "I couldn't work under a man like Mosier and keep my ethics and so I just refused to work." With reference to working for Dr. Mosier, he further stated "I could not and can't now." He did not respond to the offer because he did not "feel like I owed him that courtesy." At the trial he made reference to provisions of new contract. However, there is nothing indicating he objected to provision of contract at time it was offered.

Mr. McLaughlin testified he refused the offer because he had verbally accepted employment with a high school. He testified that even if he had not been under contract to the high school, he would have been reluctant to accept the new contract because of terms, and because he believed

it would be a one year contract. He believed he could teach at the high school until he retired.

In March, 1973, he wrote Dr. Mosier stating that he was free to accept contract for 1973–1974. Dr. Mosier informed him there was no position available.

Mr. Burruss accepted the new contract subject to cover letter reserving all rights in pending suit. However, he then had disagreement with Dr. Mosier over university housing. On August 21, 1972, he submitted his resignation.

From this testimony if appears Mr. Deaton rejected the new contract because he did not like Dr. Mosier, Mr. McLaughlin rejected the new contract because he had accepted a new position, and Mr. Burruss resigned as a result of a disagreement with Dr. Mosier over housing. None of them rejected the new contract because of conditions contained therein.

When one party to a contract acts in a manner which prevents performance by the adverse party, such party waives his right to require the adverse party to perform. *Rogers v. Goodwin*, 208 Okl. 110, 253 P.2d 844.

We conclude these instructors abandoned their positions at the school and were not deprived of any tenure rights. Therefore, they are not entitled to reinstatement.

Mr. King accepted the contract for employment for the 1972–1973 school year.

Dr. Mosier recommended that Board not rehire him for 1973–1974 academic year on grounds of "instructional inefficiency." This recommendation was approved by the Board of Regents.

The court found that after the 1973 termination, Mr. King requested hearing which was denied. It further found that "instructional inefficiency" was ambiguous and was not same as term "academic inefficiency" specified in Faculty Security Policy as ground for non-retention of faculty. It ordered Board to grant Mr. King hearing on issue of academic inefficiency.

The Board then held a hearing and subsequently reinstated Mr. King. In their briefs both parties state Mr. King is presently employed. We conclude Mr. King has not been deprived of any tenure rights.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., HODGES, V. C. J., and IRWIN, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.