356 So.2d 915 (1978)
Dr. Nancy T. CLASBY, Appellant,
v.
The UNIVERSITY OF MIAMI, Appellee.
No. 77-507.
District Court of Appeal of Florida, Third District.
March 28, 1978.
*916 Pearson & Josefsberg and Bruce S. Rogow, Miami, for appellant.
Mershon, Sawyer, Johnston, Dunwody & Cole and Charles C. Kline, Miami, for appellee.
Before HAVERFIELD, C.J., PEARSON, J., and CHARLES CARROLL (Ret.), Associate Judge.
CHARLES CARROLL, Associate Judge.
The appellant, employed by the appellee University of Miami in a teaching capacity, filed this action against the University seeking damages for alleged breach of contract and a mandatory injunction to require the University to award her a tenured contract for the academic year 1974-1975 and to renew same subsequently.
The defendant University answered. Discovery was had. Both parties moved for summary judgment. Plaintiff's motion was denied. The motion of the defendant University was granted. From the judgment so holding the plaintiff appealed.
The judgment entered by Judge Whitworth in the circuit court displayed full and thorough consideration of the facts, the contentions of the parties and the applicable law, and in our opinion correctly disposed of the cause. The trial court's judgment, as set out below, is adopted as the opinion of this court. It was as follows:
"This cause is before the Court on the UNIVERSITY's Motion for Summary Judgment and Motion to Strike as well as Plaintiff's Motion for Partial Summary Judgment. After reviewing the file, hearing argument of counsel and being otherwise fully advised in the premises, the Court finds and concludes as follows:

"FINDINGS OF UNDISPUTED FACTS
"1. On July 14, 1972, the UNIVERSITY entered into a written settlement agreement with Plaintiff and her husband, Dr. Eugene Clasby. The agreement compromised a claim of sex discrimination against the UNIVERSITY, which Plaintiff had filed with the United States Department of Health, Education and Welfare.
"2. The settlement agreement gave Plaintiff three years within which to earn tenure at the UNIVERSITY. During each of the three years, Plaintiff was entitled to call for a vote in her department on the question of her tenure in accordance with the normal procedures pertaining to such votes.
"3. The UNIVERSITY agreed that a majority vote in favor of tenure would activate the regular processing of the award of tenure.
"4. The regular processing of the award of tenure at the UNIVERSITY involves the following steps:
(a) First, the tenured members of the candidate's department vote on the question of the candidate's tenure.
(b) The Department Chairman reviews the candidate's qualifications, records his recommendation, and forwards the vote and his recommendation to the Dean of the candidate's school
(c) The Dean of the school asks for recommendations from the School Review Board, if there is one, makes his own recommendation, and forwards all recommendations to the Dean of the Faculties.
(d) The Dean of the Faculties obtains and records the recommendations of the Academic Personnel Board, records his own recommendations, and forwards all recommendations to the President.
(e) The President records his recommendation and forwards all recommendations to the Trustees along with the candidate's vitae and statement of qualifications.
(f) The Academic Affairs Committee of the Board of Trustees considers all recommendations, reviews the applicant's qualifications, and records its recommendation.
(g) The Executive Committee of the Board of Trustees reviews the recommendations and the candidate's qualifications and makes the final decision to grant or deny tenure.
"5. At the time Plaintiff's settlement contract was signed, the tenure process differed from that described above only in *917 that if the Office of the President decided against tenure, the candidate's application for tenure would not be forwarded to and considered by the Trustees. Instead tenure would be denied by the President.
"6. The standards for evaluating the scholarly and professional qualifications of faculty members are set forth in By-Law V of the UNIVERSITY'S Faculty Charter and By-Laws. Among the standards included in the by-law are the character of the faculty member's advanced degree; research measured by the publication of books and articles of a scholarly nature; the directing of productive work by advanced students; the receipt of awards and fellowships; memberships on Boards and Commissions devoted to inquiry; and the judgment of professional colleagues.
"7. When the settlement contract was being negotiated, Plaintiff expressed the fear that because of her complaints to the Department of Health, Education and Welfare, the `Administration' of the UNIVERSITY might recommend against tenure and thus prevent her application from ever going to the Trustees for their final consideration. For this reason, the UNIVERSITY agreed to insert in the contract the following clause:
`The University agrees that the Administration will favorably recommend to the Board of Trustees, any majority vote in favor of tenure, however, nothing contained herein is to be construed as binding the Trustees of the University to vote in favor of tenure.'
"9. [sic] Prior to the signing of the settlement contract by the UNIVERSITY, the Board of Trustees of the UNIVERSITY reviewed and approved said contract.
"10. During the first year of the settlement contract, Plaintiff failed to get a majority vote in favor of tenure.
"11. During the second year of the contract, Plaintiff received a majority vote in favor of tenure in her department (8-5). However, since a non-tenured member of the department participated in the tenure deliberations in violation of UNIVERSITY voting procedures, a second vote was required by the UNIVERSITY. The second vote was eight in favor (including the vote of Plaintiff's husband) and seven opposed. Following the second vote, the UNIVERSITY activated the regular tenure process which was followed up to the Office of the President and both votes and an explanation therefor were sent to the Trustees.
"12. During the third year of the contract, the Plaintiff received a majority vote in favor of tenure (7-5) and the regular tenure process was again activated and followed up to the Office of the President.
"13. During the second and third years, the regular tenure process resulted in the following recommendations:

 Department Chairman  recommended against
 Dean of the College
 of Arts and
 Sciences  recommended against
 Academic Personnel
 Board  recommended against
 Vice President of the
 University and Dean
 of the Faculties  recommended in favor
 President of the
 University  recommended in favor

"14. Prior to submitting the results of the tenure process to the Trustees in the second and third years of the contract, Plaintiff was invited to submit any material she wished the Trustees to consider so that they could evaluate her professional qualifications and scholarly accomplishments. In the second year, she submitted a letter complaining about the fact that a second vote on her tenure was required in the English Department. The only material submitted concerning her scholarly qualifications was a vitae listing her professional background, articles she had written, organizational activities, and awards. During the third year of the contract, Plaintiff again submitted her vitae, but nothing more. Plaintiff never submitted or offered to submit any of her publications or scholarly work to the Trustees for their consideration.
"15. During the second and third years of the contract, Plaintiff's application for tenure, vitae and all of the recommendations obtained during the tenure process were *918 submitted to the Trustees for their consideration. During both of the years, the Trustees voted to deny tenure.

* * * * * *
"19. Plaintiff did not file any affidavits, depositions or other testimony contradicting the foregoing facts.

"PLAINTIFF'S THEORY OF THE CASE
"Plaintiff claims that the clause requiring the `Administration' to favorably recommend to the Trustees any majority vote in favor of tenure required all of the administrators to recommend in favor of tenure. The Plaintiff contends that the Dean of Arts and Sciences and the Academic Personnel Board are Administrators and were therefore required by the contract to recommend in favor of tenure. Since the Dean of Arts and Sciences and the Academic Personnel Board recommended against tenure, Plaintiff argues that the contract was breached. Also, Plaintiff argues that the UNIVERSITY'S explanation to the Trustees that voting irregularities required a second vote in the second year of the contract constitutes a violation of the clause requiring a favorable recommendation to the Trustees. But for these alleged breaches of the contract, Plaintiff claims that the Trustees would have granted her tenure.

"CONCLUSIONS OF LAW
"1. Since there is no conflicting evidence as to the background and setting in which the settlement contract was executed, the interpretation of that contract is a matter of law for this Court to decide. City of Leesburg v. Hall, 96 Fla. 186, 117 So. 840, 841 (1928); Font v. Lazarus Homes Corporation, 339 So.2d 258 (Fla.3d Dist. 1976); Pentecostal Holiness Church, Inc. v. Mauney, 270 So.2d 762, 769 (Fla.4th Dist. 1973); Automatic Canteen Co. of America v. Butler, 177 So.2d 712 (Fla. 3d Dist. 1965).
"2. Based upon the undisputed facts in this case, the only reasonable interpretation of the clause requiring the `Administration' to favorably recommend any majority vote to the Trustees is that the UNIVERSITY, through the President, should recommend Plaintiff for tenure so that her application could be passed on to the Trustees for their consideration. To interpret the clause in the manner suggested by Plaintiff would be to deny effect to another clause in the contract requiring that Plaintiff's application should follow the regular processing of the award of tenure. It is undisputed that the regular processing of the award of tenure includes receiving recommendations from mid-level administrators. It would be entirely unreasonable for this Court to interpret a contract which gives Plaintiff three years to earn tenure so as to require the Dean of the college of Arts and Sciences and the Academic Personnel Board to misrepresent to the Trustees their true opinions regarding Plaintiff's scholarly accomplishments and professional ability. To do so would be to deprive the Trustees of information from persons who normally observe the Plaintiff in her professional environment and who are normally entrusted with the responsibility of making recommendations regarding a candidate's progress towards tenure.
"3. The UNIVERSITY, having processed Plaintiff's application in accordance with the normal procedure during the two years in which she received majority votes in her department, and having passed Plaintiff's application for tenure on to the Trustees with the favorable recommendation of the President, substantially performed all of the obligations required of it by the contract.
"4. As a further basis for its decision, this Court concludes as a matter of law that the negative recommendations complained of by Plaintiff were not the cause of the Trustees' denial of tenure. All of the Trustees have unequivocally stated that the following factors by themselves would have convinced them to deny tenure.
(1) The substantial split in the vote of the English Department.
(2) The Chairman of the English Department recommended against tenure.
(3) The vitae submitted by Dr. Clasby did not disclose in their judgment any substantial *919 scholarly output in the field of American Literature during the years in which she had to earn tenure.
Plaintiff has not filed any evidence conflicting with the Trustees' affidavits.
"5. When examining a decision by a private university to deny tenure to a faculty member, this Court's scope of review is limited to a determination of whether there is substantial evidence in the record to support the decision of the university's governing body (in this case the Trustees). This Court is not to conduct a review de novo of the tenure decision. Chung v. Park, 514 F.2d 382 (3d Cir.1975); Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31, 40 (3d Cir.1974); Simard v. Board of Education, 473 F.2d 988 (2d Cir.1973); Clark v. Holmes, 474 F.2d 928 (7th Cir.1972); Johnson v. Branch, 364 F.2d 177 (4th Cir.1966). To do so would require this Court to weigh Plaintiff's qualifications and substitute its judgment for the judgment of the Trustees. This would be contrary to that clause in the contract which states that `nothing contained herein is to be construed as binding the Trustees of the University to vote in favor of tenure' and contrary to the controlling rule of law in this country. Keddie v. Pennsylvania State University, 412 F. Supp. 1264, 1270 (M.D.Pa. 1976). Furthermore, Plaintiff apparently does not seek review de novo by this Court since she has stated in her memorandum of law filed with this Court that she did not intend to try the issue of her scholarly ability:
`Dr. Clasby's academic credentials are not in issue in this case. We do not intend to turn this trial into a contest over her ability. The issue is whether the Trustees assessed her ability'
The evidence before this Court is unequivocal that the Trustees reviewed and assessed Plaintiff's scholarly qualifications and professional ability. There is no evidence before this Court that the three factors relied on by the Trustees would not support their decision to deny tenure. It follows then, that the
"6. The pleadings, depositions, answers to interrogatories and affidavits on file show that there is no genuine issue as to any material fact and that the UNIVERSITY is entitled to a judgment as a matter of law. Because of the decision announced herein, there is no need for the Court to rule on the UNIVERSITY'S Motion to Strike. Accordingly, it is

"ORDERED AND ADJUDGED
"That Defendant's Motion for Summary Judgment be and the same is hereby granted; and Plaintiff's Motion for Partial Summary Judgment be and the same is hereby denied. This opinion and Order shall be the final judgment of the Court. The Plaintiff shall take nothing by her suit and the Defendant shall go hence without day."
Upon concluding that the contentions and arguments of the appellant on this appeal are adequately answered adversely to the appellant by the reasoning and decision of the trial court, as above quoted, we find no necessity for further statements thereon. Accordingly, the judgment is affirmed.