Robert WEEKS, Appellant,

v.

NORTHEAST OKLAHOMA AREA VOCATIONAL-TECHNICAL SCHOOL, DISTRICT NO. 11 and Jack Kissee, Robert I. Hartley, Glen Vernnon, Merrill Chaney, and Allen Bodenhagen, in their official capacities as members of the Board of Education of the Northeast Oklahoma Area Vocational-Technical School, District No. 11, Appellees.

No. 56960.

Court of Appeals of Oklahoma, Division No. 1.

Mar. 23, 1982.

Rehearing Denied May 18, 1982.

Certiorari Denied July 7, 1982.

Released for Publication by Order of the Court of Appeals July 9, 1982.

Fagin, Hewett, Mathews & Fagin by Warner E. Lovell, Jr., Oklahoma City, for appellant.

Logan, Lowry, Johnston, Switzer & West by Donald K. Switzer, Vinita, for appellees.

REYNOLDS, Judge:

Robert Weeks (Weeks) appeals from a judgment of the District Court of Ottawa County sustaining a motion for summary judgment for Northeast Oklahoma Area Vocational-Technical School and the Board of Education (Board). Weeks contends that the trial court erred in finding that the Board complied with the Oklahoma Open Meeting Act, 25 O.S.Supp.1977, § 304(5), and with the due process requirements of 70 O.S.Supp.1977, § 6–103.4(E) in making its decision not to renew his teaching contract.

Weeks was employed by Appellee as an occupational services teacher. At a regularly scheduled meeting on December 17, 1979, the Board of Education voted to discontinue the occupational services program, effective at the end of the 1979–80 school year. Weeks was orally advised of the program's termination in December. A letter written to Weeks on March 13, 1980, formally advised him that his program was being discontinued and that his "... services [would] not be required for the coming

school year 1980–81." A supplemental letter, dated March 24, 1980, informed Weeks that he had a right to request a hearing before the Board of Education. Weeks responded and requested a hearing on March 28, 1980. The Board discovered on April 8, 1980, that 25 O.S.Supp.1977, § 304 and § 305 required it to vote on the record for non-renewal of Weeks's contract. If a meeting was not held by April 10, 1980, the contract would be automatically extended for another year under 70 O.S.1971, § 6–101(E). An emergency meeting was called for April 9, 1980. Weeks was informed of the meeting by telephone. A letter was sent the same day advising Weeks that the Board had voted to non-renew his contract and that he was entitled to a due process hearing. Weeks requested a hearing, and one was held on May 19, 1980. Suit was filed on September 24, 1980.

Weeks asks this Court to overrule the trial court's decision sustaining the Board's motion for summary judgment, and to grant him a motion for partial summary judgment and to set a date certain for trial to determine Weeks's monetary damages.

█ Weeks argues that he was not afforded due process within the contemplation of 70 O.S.Supp.1977, § 6–103.4(E) which reads:

E. If a probationary teacher fails to notify the clerk ... of his or her desire to have a due process hearing on his or her dismissal or nonreemployment conducted by the local board of education, the teacher shall be deemed to have waived his or her right to the hearing and the initial determination of his or her dismissal or nonreemployment by the board of education shall become final and nonappealable. If ... the probationary teacher notifies the clerk of the board of education of his or her desire to have a due process hearing on his or her dismissal or nonreemployment conducted by such board, the board shall, as soon as possible, hold a hearing. At the hearing the probationary teacher shall be afforded all such

procedural due process rights as are guaranteed by the Oklahoma and United States Constitutions. At the conclusion of the hearing, the local board of education shall render a final and nonappealable decision on the question of the probationary teacher's dismissal or nonreemployment.

Reliance upon this statute is misplaced. For 70 O.S.Supp. 1977, § 6–103.4 to apply, a teacher must be dismissed for cause. The letter to Weeks dated March 13, 1980, amply shows that the non-renewal was based on factors not related to cause. Weeks was advised:

> In a regulatory scheduled meeting of the Board of Education on December 17, 1979, action was taken by the Board *to discontinue the Occupational Services Program* at the North Campus of the Northeast Area Vocational-Technical School District # 11, effective at the end of the current school year 1979–80. [Emphasis added.]

The procedural due process required in 70 O.S.Supp.1977, § 6–103.4 and § 6–103.7 are designed to allow a teacher to respond to substantive charges which may impose a stigma or disability in future employment. *Cf. McGhee v. Draper,* 564 F.2d 902 (10th Cir.1977), appeal after remand, 639 F.2d 639 (10th Cir.1981); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972.) No such impediment exists here.

■ The procedure for renewing or non-renewing teachers' contracts contained in 70 O.S.1971, § 6–101(E) states in relevant part:

> E. A board of education shall have authority to enter into written contracts with teachers for the ensuing fiscal year prior to the beginning of such year. If, prior to April 10, a board of education has not entered into a written contract with a regular employed teacher or notified him in writing by registered or certified mail that he will not be employed for the ensuing fiscal year, and if by April 25, such teacher has not notified the board of education in writing by registered or certified mail that he does not desire to be reemployed in such school district for the ensuing year, such teacher shall be considered as employed on a continuing contract basis and on the same salary schedule used for other teachers in the school district for the ensuing fiscal year, and such employment and continuing contract shall be binding on the teacher and on the school district. . . .

This procedure was followed. The letters dated March 13, 1980, and March 24, 1980, advising Weeks that his contract would not be renewed and that he had a right to hearing were sent by certified mail.

■ Weeks alleges that the hearing provided did not afford him due process. The United States Supreme Court, in *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), has stated:

> Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

A full procedural due process hearing is required only when the decision to non-renew a non-tenured teacher deprives him of an interest in liberty or property protected by the 14th Amendment to the United States Constitution. *King v. Board of Regents, Claremore Junior College,* 541 P.2d 836 (Okl.1975); *Board of Regents v. Roth, supra.* See also, *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In *Roth, supra,* the United States Supreme Court held that the decision not to rehire a non-tenured instructor would not deprive him of an interest in liberty unless it was in retaliation for the instructor's exercise of constitutional rights. Further, a non-tenured teacher does not have a property interest in his employment absent a provision in state law. *Roth, supra,* at 578, 92 S.Ct., at 2709. The due process provisions

of 70 O.S.Supp.1977, § 6–103.4 do not create such a property interest. There has been no showing that the Board non-renewed Weeks other than in the proper exercise of its discretion under 70 O.S.Supp. 1979, § 5–117 and in good faith. As the Supreme Court of Pennsylvania stated in *Ehret v. School District of Borough of Kulpmont,* 333 Pa. 518, 5 A.2d 188, 191:

> To sustain appellee's contention that a teacher whose department has been discontinued must be retained, and the board compelled to pay her while she is idle, would seriously handicap our educational policies. Many new fields of experimentation have been launched by our school authorities. Some have been found unsuccessful in accomplishing their purpose, and if appellee's position is upheld, no school board would risk the establishment of any new department, which in the event of failure must be continued or its idle teachers paid.

■ Weeks alleges that the Board meeting held on April 9, 1980, did not qualify as an emergency within the meaning of 25 O.S.Supp.1977, § 304 which states:

> "Emergency meeting" means any meeting called for the purpose of dealing with an emergency. For purposes of this act, an emergency is defined as a situation involving injury to persons or injury and damage to public or personal property or *immediate financial loss when the time requirements* for public notice of a special meeting *would make such procedure impractical and increase the likelihood of* injury or damage or *immediate financial loss.* [Emphasis added.]

Had the Board not held a meeting on April 9, 1980, the taxpayers and school district would have sustained a loss of nearly seventy thousand dollars in salaries to teachers whose courses had been terminated. There is no evidence that the Board deliberately, in bad faith, waited until April to take its vote. The "... public policy of the State of Oklahoma [is] to encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems ...." 25 O.S.Supp.1977, § 302. This is accomplished by having an open vote which is publicly recorded. 25 O.S.Supp.1977, § 307. The vote taken on April 9, 1980, fulfilled the purposes of the Open Meeting Act.

AFFIRMED.

WILSON, P.J., and BOX, J., concur.