Cindy STERN, Appellee,

v.

The UNIVERSITY OF OKLAHOMA BOARD OF REGENTS, Ronald H. White, M.D., Sarah Hogan, Sylvia A. Lewis, Sam Noble, E. Murray Gullatt, J. Cooper West, G.T. Blankenship; President Richard Van Horn; and Provost Joan Wadlow, Appellants.

No. 78690.

Court of Appeals of Oklahoma, Division No. 3.

Nov. 3, 1992.

As Corrected Nov. 5, 1992.

Susan Gail Seamans, Oklahoma City, and Fred Gipson, Kurt F. Ockershauser, and Lawrence E. Naifeh, Norman, for appellants.

Patrick Chesley, Norman, for appellee.

## MEMORANDUM OPINION

HANSEN, Vice–Chief Judge:

Appellants, "University", seek review of the trial court's order which sustained Appellee Stern's motion for summary judgment. Stern brought this action for breach of contract and violation of due process when the University declined to offer Stern a tenured teaching position at the University of Oklahoma. For the reasons herein discussed, we must reverse the trial court's order.

Stern was appointed as a probationary professor in the Department of Philosophy at O.U. in 1984. Both parties agree Stern's appointment was subject to the provisions of the University of Oklahoma Norman Campus Faculty Handbook (Handbook). Stern was considered for tenure in the 1987–1988 academic year. The procedures for granting or denying tenure are outlined in detail in the Handbook. Pursuant to

these procedures, Stern received unanimous approval for tenure from the members of the Department of Philosophy. Next, Committee A of the Department and the Chair of the Department recommended that Stern be granted tenure. The next step was review by the Campus Tenure Committee (Committee). The Committee recommended that Stern be *denied* tenure. The Dean of the College of Arts and Sciences also recommended that Stern be denied tenure. Stern appealed the decision of the Committee to the Faculty Appeals Board which determined the Committee had arbitrarily substituted its judgment for that of the Philosophy Department and outside reviewers and editors who had reviewed Stern's work, and that the Committee exceeded its scope of review of Stern's tenure dossier. The Board recommended that the Campus Tenure Committee review Stern's dossier anew. The University Provost, President and Board of Trustees chose not to accept the recommendation of the Appeals Board and denied Stern tenure.

The Handbook provides that all evaluations for tenure shall address the candidate's performance in teaching, research or creative achievement, professional service and university service. The August, 1987, Call for Tenure memorandum from the Provost, sets out in detail the deadlines for each step in the tenure process and specifies what each evaluative unit should look for in assessing the tenure candidate's teaching, research and service. The Tenure Committee recommended Stern be denied tenure because her research was deficient.

The trial court found Stern was a "tenure track" professor under contract with the University and that the contract was subject to the provisions of the Handbook

and other written procedures and policies adopted by the University of Oklahoma Board of Regents. The trial court found the Campus Tenure Committee did not follow the prescribed, adopted written procedures for tenure evaluation and acted ultra vires in performing an independent evaluation of Stern's scholarship. The court concluded this failure to follow the adopted procedures constitutes a breach of contract. The trial court further stated the employment contract gave Stern a constitutionally-protected interest entitling her to be evaluated for tenure in accordance with the written procedures and criteria published in the Handbook and that the University's failure to follow these procedures constituted a "deprivation of an opportunity based on specified conditions by the State without Due Process." The trial court's judgment included a grant of tenure to Stern based upon the University's failure to present evidence that she did not meet the contractually established tenure criteria.

 We will address the due process issue first.[1] Both the state and federal constitutions prohibit the deprivation of life, liberty or property without due process of law. United States Constitution, 14th Amendment; Oklahoma Constitution, Art. 2, Section 7. The threshold determination which must be made in each procedural due process claim is whether a liberty or property interest is at stake. *Wood,* at 894. Stern has not alleged a violation of a liberty interest under the Due Process Clause.[2] Property interests are not created by the due process clause but by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract. *Carnes v. Par-*

1. We will treat the trial court's judgment regarding the due process claim as a determination that Stern was deprived of procedural due process because a nontenured teacher's interest in continued employment is not a substantive right protected by the due process clauses. *Wood v. Independent School District No. 141 of Pottawatomie County,* 661 P.2d 892 (Okla.1983).

2. The discharge of a nontenured public employee that puts the employee's reputation at stake constitutes a protectible liberty interest. *See*

*Blanton v. Housing Authority of City of Norman,* 794 P.2d 412, 418, note 1 (Okla.1990). Also, a non-tenured instructor would have a protectible interest in liberty if he or she was terminated or not rehired in retaliation for the instructor's exercise of a constitutional right. *See King v. Board of Regents, Claremore Junior College,* 541 P.2d 836 (Okla.1975); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

*ker,* 922 F.2d 1506 (10th Cir.1991). To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wood,* at 894. When an employee bases an expectation of continued employment on an employment contract, we must rely on state contract law to determine whether there is a legitimate claim to continued employment under the contract. *Carnes,* at 1510. Thus, Stern's "property" interest in tenure, if it exists, must be created and defined by the terms of her appointment. Did the terms of the Handbook and other adopted tenure procedures entitle her to tenure?

■ "Tenure" in the academic community commonly refers to status granted, usually after a probationary period, which protects instructors from dismissal except for serious misconduct, incompetence, financial exigency, or change in institutional program. *Price v. Oklahoma College of Osteopathic Medicine and Surgery,* 733 P.2d 1357, note 1 (Okla.App.1986). Tenure typically involves a "long-term academic and financial commitment by a university to an individual, providing faculty with unusually secure positions tantamount to life contracts." *Beitzell v. Jeffrey,* 643 F.2d 870, 875 (1st Cir.1981). The decision to grant tenure, like other academic matters, typically calls for the exercise of subjective judgment, confidential deliberation, and personal knowledge of both the candidate and the university community. *Beitzell,* at 875; *Staheli v. University of Mississippi,* 854 F.2d 121 (5th Cir.1988). For these reasons, it is unreasonable for nontenured instructors to rely upon an award of tenure.

> By specifying in writing the usual criteria for promotion—teaching, scholarship, service—a university does not thereby set objective criteria, constricting its traditional discretion or transforming a largely judgmental decisional process into an automatic right to, or property interest in, tenure.

*Lovelace v. Southeastern Massachusetts University,* 793 F.2d 419 (1st Cir.1986).

We can find no state or federal cases where a probationary instructor had a protected property interest in tenure, absent a de facto tenure situation or other unusual circumstances.[3]

The Handbook and related procedures indicate that only the Oklahoma University Board of Regents has the authority to grant or deny tenure. Handbook, 3.7.1. All other evaluative units in the process simply make recommendations regarding the candidate's tenure after reviewing the candidate's dossier. Although the Handbook and related Call for Tenure memorandum set criteria for the tenure award, it did not "set objective standards conferring an automatic right to tenure, nor did they create a reasonable expectation of receiving it." *Beitzell,* at 876. There is nothing in the Handbook to suggest that tenure was meant to be granted routinely or that it would be withheld only "for cause". *See Beitzell,* at 876. Accordingly, Stern had no protected property interest in obtaining tenure at O.U. and the trial court erred in determining that she had been deprived of due process.

■ The next issue for our determination is whether the trial court correctly determined Appellees had breached the employment contract with Stern. The trial court determined the University breached the contract because the Campus Tenure Committee acted ultra vires in performing an independent evaluation of Stern's scholarship and by making a specific finding that tenure be denied.

The Handbook provides in its "Procedures for the Tenure Decision", Section 3.7.5, the responsibilities of the Campus Tenure Committee.

> "(k) The main purpose of the Campus Tenure Committee is to provide faculty advice on whether or not the academic unit's recommendation with regard to *both substance and process* is sustained by the accompanying documentation and is consistent with the approved tenure criteria of the academic unit and the University. If it determines that the documentation is inadequate, the Campus

**3.** *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Weeks v. Northeast Oklahoma Area Vocational–Technical School District No. 11,* 657 P.2d 1205 (Okla.App.1982).

Tenure Committee may request more information from the academic unit.

"(1) The Campus Tenure Committee and the dean will attach their recommendations to the tenure materials and separately forward all materials to the Provost with supporting reasons and will notify the candidate and the chair of the unit of their recommendations." (Emphasis supplied.)

The Call for Tenure memorandum from the Provost provides the Campus Tenure Committee must forward its opinion *"of substance and process"* to the Provost by February 2, and shall notify the candidates, the candidates' deans, and the chair, of the Committee's opinion.

The February 1, letter from the Committee regarding Dr. Stern's tenure indicates they recommended "approval of the *process* by which the Department of Philosophy made its recommendation." However, the letter continued to describe in detail why it felt Stern's research was deficient and concluded there was "inadequate documentation in Professor Stern's dossier to support excellence in research." The Faculty Appeals Board found the Tenure Committee had the authority only to determine whether the tenure documentation is supportive of the Department's recommendation. The President and Regents disagreed with the Board's interpretation of the Committee's authority and denied Stern tenure, thereby disregarding the Board's recommendation.

A plain reading of the Handbook and related memorandum indicate the Tenure Committee had the responsibility to review the Department's tenure recommendation using a two-pronged test: to determine whether it was sustained by the documentation with regard to *both process and substance.* The Committee's letter evaluating Stern clearly addressed and made recommendations on both process and substance. Accordingly, the University did not breach its contract with Stern when the Campus Tenure Committee evaluated the substance of her research and arrived at the recommendation to deny tenure. The trial court erred in its determination that a qualitative evaluation of Stern's scholarship by the Campus Tenure Committee directly violated the Handbook and constituted a breach of contract.

Courts must take special care to preserve a university's autonomy in making lawful tenure decisions when reviewing tenure cases. *Brown v. Trustees of Boston University,* 891 F.2d 337 (1st Cir.1989). Because tenure decisions require subjective judgments regarding candidates' qualifications and because of the long-term commitment a decision of tenure necessarily entails, courts should be wary of intruding into the world of university tenure decisions, absent discrimination or other unlawful action by the university. *Id.,* at 346.

There are no material controverted facts which would have justified a trial. *Hargrave v. Canadian Valley Electric Cooperative, Inc.,* 792 P.2d 50 (Okla.1990). The trial court erred in determining that the uncontroverted facts as supported by the evidence supported a determination that Stern's due process had been violated and the University had breached the contract. Therefore, the order of the trial court granting summary judgement in favor of Appellee and granting her tenure is reversed.

REVERSED.

BAILEY, P.J. and HUNTER, J. concur.