727 So.2d 275 (1999)
Arvind S. KUMBHOJKAR, Appellant,
v.
UNIVERSITY OF MIAMI, a Florida private educational corporation, Appellee.
Nos. 97-1112, 97-1627.
District Court of Appeal of Florida, Third District.
February 10, 1999.
Marlowe Blake; Jay M. Levy, Miami, for appellant.
*276 Fisher & Phillips and Thomas P. Rebel and Kurt Peterson, Atlanta, GA; Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Robert C. Josefsberg, Miami, for appellee.
Before SCHWARTZ, C.J., and FLETCHER, J., and LARRY G. SMITH, Senior Judge.
SCHWARTZ, Chief Judge.
The appellant is a former faculty member who sued the University of Miami for money damages because he was denied tenure. We affirm the summary judgment granted the University below on the ground that the record, as a matter of law, affords no basis for interfering with its decision.
While the parties have presented conflicting views of many details of the intricate process of votes, recommendations and decision-making taken in Professor Kumbhojkar's case in accordance with the rules established by the University on the tenure question,[1] it is not necessary to address or resolve them except in the most general terms. It is enough to say that, as in our leading case of Clasby v. University of Miami, 356 So.2d 915, 919 (Fla. 3d DCA 1978), the record contains
substantial evidence ... to support the decision [of the Provost, the official empowered to make the decisive recommendation to deny tenure and] of the University's governing body.
Clasby, 356 So.2d at 919. Similarly, any need to elaborate upon the judicial considerations which have led to our conclusion notably the necessity of preserving academic independence and the inability and inadmissibility of the courts' superintendence of the ineffable factors involved in the crucially important tenure decisionhas been pretermitted by many recently decided decisions on the topic. Preeminent among these is University *277 of Baltimore v. Iz, 123 Md.App. 135, 716 A.2d 1107 (1998), cert. denied, 351 Md. 663, 719 A.2d 1262 (1998), which contains a comprehensive discussion and correct resolution of the issues presented by such a case, and upon which we could not improve. Iz, which, like the trial judge here, declined to recognize the claim of the disappointed applicant for tenure, is in accordance with numerous similar opinions which, largely on the grounds to which we have averred, have denied relief. See Jackson v. Harvard University, 721 F.Supp. 1397 (D.Mass.1989), aff'd, 900 F.2d 464 (1st Cir.1990), cert. denied, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990); McGill v. Regents of the University of California, 44 Cal.App.4th 1776, 52 Cal. Rptr.2d 466 (1996); Olson v. Idaho State University, 125 Idaho 177, 868 P.2d 505 (Idaho App.1994), review denied (March 9, 1994); Taggart v. Drake University, 549 N.W.2d 796 (Iowa 1996); Chronopoulos v. University of Minnesota, 520 N.W.2d 437 (Minn.App. 1994), review denied (No. C1-94-647, October 27, 1994); Kirsch v. Bowling Green State University, No. 95 AP 111-1476, 1996 WL 284717 (Ohio App. May 30, 1996), appeal dismissed, 77 Ohio St.3d 1472, 673 N.E.2d 137 (1996); Stern v. University of Oklahoma Bd. of Regents, 841 P.2d 1168 (Okla.App. 1992); Baker v. Lafayette College, 350 Pa.Super. 68, 504 A.2d 247, aff'd, 516 Pa. 291, 532 A.2d 399 (1987); Beville v. University of South Dakota/Bd. of Regents, 420 N.W.2d 9 (S.D.1988); Cherry v. Utah State University, 966 P.2d 866 (Utah App.1998); Trimble v. Washington State University, No. 22022-9-II, 1998 WL 726481 (Wash.App. October 16, 1998); Weyenberg v. University of Wisconsin-Oshkosh, 210 Wis.2d 498, 568 N.W.2d 321 (Wis.App.1997)(1997 WL 209388). One exception to this line of cases, Ganguli v. University of Minnesota, 512 N.W.2d 918 (Minn.App.1994), proverbially proves the rule in two respects. First, it was based on violations of the University's own standards which find no parallel in the present record. Second, a subsequent University decision to deny Ganguli tenure was finally approved by the same court on the principles reflected in Clasby and Iz. Ganguli v. University of Minnesota, No. C7-96-835, 1996 WL 689786 (Minn.App. December 3, 1996), review denied (No. C7-96-835, January 21, 1997).
Kumbhojkar's most significant argument is that the University did not act in "good faith," thereby creating, he says, a right to recover under the doctrine recognized in Hazen v. Cobb, 96 Fla. 151, 117 So. 853 (1928), and, he argues, implied in Clasby itself. We do not agree. The only arguable basis for this contention is the indication that the less-than enthusiastic endorsement of his tenure application by his department head,[2] which in turn gave rise to the Provost's initial concern on the topic,[3] was based, not on an objective view of Kumbhojkar's qualifications, but upon personal animosity relating to prior internal disputes within his department: that is, in a phrase, upon academic politics. We reject this argument as facially insufficient because it does not concern the ultimate decision makers, the Provost, the President and the Board of Trustees, see Iz, 123 Md.App. at 175, 716 A.2d at 1127, and for another reason which is much more profound. It is inconceivable that politics, which is famously as much a part of academic life as books or examinations, can (or should) ever be separated from the workings of our universities. It is even more obvious that, of all institutions, it is not for the courts to enter into any such quixotic undertaking one which would require an impossible analysis of subjective thought processes and almost always ambiguous personal motivations, concerning which we are totally inexpert. See Clasby; Iz; Taggart; Chronopoulos.[4] If there is indeed a "bad faith" exception to the rule of judicial noninterference in the tenure process, a question we need not directly decide, it cannot involve an inquiry into whether the "real" reason a particular faculty member, department head or administrator *278 made her particular decision upon a particular applicant was an acceptable or an unworthy one. See by analogy, e.g., Goodman v. Temple Shir Ami, Inc., 712 So.2d 775 (Fla. 3d DCA 1998)(no inquiry into motivation of congregation members concerning tenure of clergy), review granted, 727 So.2d 905 (Fla. Case no. 93,832, December 14, 1998); Devoney v. State, 717 So.2d 501 (Fla.1998)(no inquiry into non-discriminatory motivations of jury members); Rainbow Lighting, Inc. v. Chiles, 707 So.2d 939 (Fla. 3d DCA 1998)(no inquiry into motivations of commissioners in adopting ordinance); see also Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)(motivation of officer making justified traffic stop irrelevant); Johnson Enters. v. FPL Group, Inc., 162 F.3d 1290 (11th Cir.1998)[12 Fed.L.W. C389](ill feeling of person making privileged interference with another's business relations irrelevant). Whether we rationalize our conclusion by indulging a fictitious but convenient presumption of bona fides on the part of the participants in the process or simply announce that even looking into the subject is too dangerous a course to engage in at all, we conclude that claims of political or other non-"merit" bases for tenure decisions may not be recognized. Absent a significant breach of the established procedural rules, outright corruption or similar misconduct, or a claim of constitutionally or statutorily forbidden discrimination, none of which exists here, the University's conclusion must stand.
Affirmed.
NOTES
[1] The UM's brief presents a fair summary of the pertinent facts:

In considering Appellant for tenure in 1992, his overall performance in four areas was considered: teaching, scholarly publications, external funding, and community service. Significantly, the University Faculty Manual which governed Appellant's tenure candidacy did not establish any minimum, mean, or maximum "goals" that must mechanically have been satisfied in these four areas before he, or anyone else, would have been entitled to tenure. Rather, the only overriding "criteria" was that only those professors who had demonstrated truly "outstanding" performance in these areas would receive a tenure appointment. The Faculty Manual therefore proclaimed that "[t]he policy of this University is to enlist, develop and retain distinguished faculty members with outstanding qualifications." Appellant and his senior departmental colleagues readily agreed that the University was to award tenure only to those candidates who were felt to be truly outstanding or exemplary.
To determine which tenure candidates had shown outstanding performance over their careers, the Faculty Manual established that several levels of review were to be made by several different groups of people. [E]ach person, at every step of the tenure consideration procedure, was to make an independent evaluation of the tenure candidate. No one person was bound to vote as any other person preceding him had voted. Further, this independence extended to the Provost, the Chief Academic Officer of the University. This fundamental point was conceded by Appellant himself, and even by senior faculty within his Department who felt that Appellant was deserving of tenure.
Accordingly, after the senior faculty members of Appellant's department voted in favor of his tenure, the Chair of the departmentDr. David Chindrafted his own, independent evaluation. In that evaluation, Dr. Chin recommended that Appellant be granted tenure, but he qualified his recommendation as being "very marginal." The Dean of the School thereafter provided his own recommendation, which also was only marginally in favor of the Appellant. Then, after twice reviewing Appellant's file, including the prior votes, internal recommendations, Appellant's curriculum vitae, external letters of recommendation and related materials, the Provost recommended against tenure. In so recommending, the Provost felt, as did the Chair, that the Appellant's overall qualifications were marginal. [G]enerally speaking, the Provost felt that although Appellant had demonstrated competence as a teacher, he was not excellent in this regard. Moreover, Appellant's failure to publish consistently throughout his career raised concern as to his commitment to and likelihood of continued publication after tenure. Additionally, while Appellant had some community service, his efforts were not exemplary.
Although the Appellant appealed his tenure denial to the Tenure Review Board, the Provost persisted in his belief. When the President ultimately concurred with the Provost, tenure was not granted to Appellant. (footnotes omitted)
[2] The facts are very similar to those in Ganguli v. University of Minnesota, No. C7-96-835, 1996 WL 689786 (Minn.App. December 3, 1996), review denied (No. C7-96-835, January 21, 1997).
[3] See supra note 1.
[4] We must acknowledge that, even though these decisions all reject claims that, in the particular case, "bad faith," was involved, several of them involve much more expansive inquiries into the motivation of the academic players than we would be willing to recognize.