868 P.2d 505

Donald O. OLSON, Plaintiff–Appellant,

v.

**IDAHO STATE UNIVERSITY,**
**Defendant–Respondent.**

No. 20000.

Court of Appeals of Idaho.

Jan. 27, 1994.

Petition for Review Denied March 9, 1994.

Service, Gasser & Kerl, Pocatello, for plaintiff-appellant. Steven V. Richert argued.

Jesse C. Robison, Pocatello, for defendant-respondent.

## SUBSTITUTE OPINION

SWANSTROM, Judge, Pro Tem.

This controversy concerns the denial of tenure and the nonreappointment of Donald Olson to the faculty at Idaho State University (hereinafter ISU). The district court dismissed Olson's suit on ISU's motion for summary judgment, finding that Olson, as a nontenured faculty member, had no constitutionally protected property interest in continued employment and that he had suffered no due process violations or breach of contract by ISU's conduct. Olson appeals from the summary judgment entered in favor of ISU. We affirm.

Donald Olson was first employed by ISU as an electronics instructor in 1985 and was reappointed under a series of one-year contracts through the 1989–1990 academic year. Olson at all times was classified as a nontenured, probationary employee. According to the policies and procedures of the Idaho State Board of Education and the Faculty/Staff Handbook, Olson became eligible and applied for tenure in his fifth year of probation. By a letter of March 16, 1990, from the Vice President of Academic Affairs, Olson was advised that he would be considered for tenure after an additional year which "will allow you the opportunity to marshal appro-

priate credentials for receiving the award of tenure."

As the evaluations required for tenure were completed, Olson was informed of the positive recommendations of the tenure committee, his peer evaluators and the department chairperson. In a letter dated March 1, 1991, the Dean of the School of Vocational Technology recommended to the Vice President for Academic Affairs that Olson be granted tenure. Thereafter, the Vice President communicated his recommendation of tenure to ISU's President, Richard Bowen.

The consideration of Olson's tenure request was proceeding when Dean Richard Johnson learned of an unofficial evaluation of the manager of the technical division. It was reported that Olson had initiated the evaluation, an undertaking which he was not authorized to conduct and which was contrary to the Faculty/Staff Handbook. Olson received a letter of reprimand for his unacceptable behavior which the Dean had construed as insubordination. He was further advised that the Dean intended to revisit his recommendation regarding Olson's tenure as a result of this unauthorized activity. On May 17, 1991, President Bowen formally notified Olson of his nonappointment to tenure and of nonrenewal of his contract. On May 23, 1991, Olson signed his 1991–1992 contract, which was his final contract, and in August, 1991 he filed this action against ISU.

ISU filed a motion for summary judgment asserting that no genuine issue of material fact existed as to Olson's claims of breach of contract or breach of the covenant of good faith and fair dealing on account of the administration's "revisiting" of Olson's recommendation for tenure. In its memorandum decision and order granting ISU's motion for summary judgment, the district court concluded that Olson did not have a property right in continued employment until he was granted tenure by the Board of Education (the Board), which was never granted. The district court also denied Olson's claim that his constitutionally protected liberty interest in his good name, reputation and associations in the community was impaired. The court held that Olson was accorded all of the due process to which he was entitled and did not

otherwise suffer any interference with his final term contract or his standing in the community by ISU's decision not to reappoint.

▉▉▉ On review of a grant of summary judgment, we examine the record to determine whether there are genuine issues of material fact and whether the prevailing party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Anderson v. City of Pocatello,* 112 Idaho 176, 731 P.2d 171 (1986); *Herrera v. Conner,* 111 Idaho 1012, 729 P.2d 1075 (Ct.App.1986). Facts in the record and all reasonable inferences drawn from those facts are viewed in favor of the nonmoving party. *Anderson,* 112 Idaho at 179, 731 P.2d at 174. If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied. *Loomis v. City of Hailey,* 119 Idaho 434, 807 P.2d 1272 (1991).

### I.

Olson first contends that he was denied due process in his nonappointment to tenure which in turn led to the nonrenewal of his teaching contract after the 1991–1992 school year. Olson argues that he had performed all that had been required of him in his probationary period, had progressed to the final stages in the tenure process and had been recommended for tenure by every administrator except President Bowen. As a result, Olson asserts that a question of fact exists as to whether he had a constitutionally protected property interest in continued employment. He also asserts that a question of fact exists as to whether his liberty interest in his good name and reputation in the community was impaired by the conduct of ISU in not rehiring him on grounds of insubordination.

### Property Interest

In the ISU Faculty/Staff Handbook, tenure is described as a condition of presumed continuous employment following the expiration of a probationary period. Tenure status is available only to full-time institutional faculty members whose appointments have been approved by the Board. In this case, there

is no dispute in the record that the Board never acted on Olson's tenure request because the President chose to reject the preliminary recommendations and to withhold from the Board his recommendation that Olson be granted tenure.

■ As was stated in *Loebeck v. Idaho State Board of Education*, 96 Idaho 459, 530 P.2d 1149 (1975), the conferring of tenure at Idaho State University requires an affirmative act by the university administration. Olson, however, fails to address *Loebeck* which specifically answers his claim that he had a protected interest in continued employment. Our Supreme Court held:

> Nothing in the terms of the year to year contracts entered into between appellant and the University or in any state statute or university rule or policy conferred on appellant any legitimate entitlement to tenure. She had nothing more than a hope of receiving tenure. "That hope is not a property right and frustration of such a hope does not trigger the right to a hearing * * *" *Perrin v. Oregon State Board of Education*, [15 Or.App. 268], 515 P.2d 409 (Or.1973); *See also Board of Regents v. Roth*, 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)]. Although appellant had been rehired in consecutive years that did not change her nontenured status. She had only come closer to the time at which a decision had to be made as to granting or non-granting of tenure. *Blair v. Board of Reg. of State Univ. & Com. Col. Sys., Tenn.*, 496 F.2d 322 (6th Cir. 1974).

*Loebeck*, 96 Idaho at 461, 530 P.2d at 1151. Olson, like Loebeck, was a nontenured faculty member, who had been reappointed for five years in succession and had requested that he be considered for tenure. As in *Loebeck*, all of the steps required for the granting of tenure did not take place, specifically, President Bowen's recommendation to the Board and affirmative action by the Board.

At the time his tenure was being considered, Olson's rights were defined by his one-year renewable contract. Under the policies and procedures incorporated in his contract, Olson was entitled to twelve months' notice of nonrenewal of his contract. ISU complied with this provision when in May, 1991 President Bowen sent Olson a letter advising that his 1991–1992 contract would be his terminal contract.

Olson, however, chose to interpret the administration's decision to delay consideration of tenure for one year and to identify areas of performance that needed improvement as a guarantee of tenure. His contention that he had attained a status somewhere between a nontenured, probationary employee and a tenured employee, to which due process rights attached, is wholly unsupported. Olson relies on *Ray v. Nampa School District # 131*, 120 Idaho 117, 814 P.2d 17 (1991), in maintaining that he has more than a mere hope of continued employment or tenure. The scope of his protected property interest, however, is defined by the terms of his appointment contract which specifically provided that his employment was for a period of one-year, renewable at the discretion of the Board. The contract in no way provides for either contract renewals or tenure absent "sufficient cause." *See Board of Regents v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). We conclude that Olson received all of the due process protections to which he was entitled as a nontenured faculty member under his one-year term contract.

## Liberty Interest

*Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) defined a liberty interest requiring the protections of due process when "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Id.* at 573, 92 S.Ct. at 2707. This standard was referenced by the district court which held in Olson's case that "no charge was made against [Olson] that might damage his standing or association in the community and there is no suggestion that any stigma or other disability was imposed which foreclosed his freedom to take advantage of other employment opportunities." *See Board of Regents v. Roth, supra.*

Although Olson has alleged that the nonrenewal of his contract was based on his insubordination, no reasons were cited by ISU for the nonrenewal. The Board rules require that nontenured faculty are either to be tenured or not be reappointed in their fifth year of employment. The President's decision not to recommend tenure was a discretionary decision which is not reviewable. Olson would agree with Justice Douglas, dissenting in *Roth*, that the nonrenewal of a teacher's contract is an "important interest of a citizen that should not be taken away without due process."

As in *Roth*, ISU's rules provide no real protection for a nontenured teacher who simply is not re-employed for the next contract year. The teacher must only be informed within a prescribed time concerning retention or nonretention for the ensuing year; no reasons need be given for nonretention. The record does not reflect any impairment of Olson's liberty interest. We conclude, as did the district court, that Olson received all of the due process protections to which he was entitled.

## II.

Olson next asserts that a question of fact exists as to whether Dean Johnson had in fact "revisited" his recommendation of tenure following discovery of the unauthorized evaluation initiated by Olson. He asserts that any such reconsideration of a recommendation for tenure is outside of the prescribed process for the award of tenure and thus contrary to ISU's established policies and procedures. Olson argues that a jury should have been allowed to decide whether ISU had thus breached its contract with Olson by not adhering to the policies and procedures that became a part of his employment agreement.

In his affidavit in support of the motion for summary judgment, Dean Johnson admitted that he had reluctantly recommended that Olson be granted tenure, but he denied that he had availed himself of the opportunity to revisit his recommendation after learning of Olson's participation in the unauthorized evaluation of the manager of the technical division. Other than Olson's speculation,

however, there is nothing in the record to substantiate his claim that Dean Johnson had revoked his recommendation which resulted in the derailment of Olson's tenure proceedings. Moreover, the Faculty/Staff Handbook indicates that the awarding of tenure is made only by a positive action of approval by the Board upon the recommendation of the President—two steps which never took place in Olson's case. Therefore, Olson has no right to the protections that apply to tenured faculty members.

The record discloses that Olson continued in the employ of ISU through the term of his final contract and was paid in accordance with the terms of that contract. There is no evidence that ISU failed to discharge any of its obligations under Olson's 1991–1992 contract. In accordance with the Faculty/Staff handbook, Olson sought to be considered for tenured status, and the evaluations to that end were conducted. Olson has not shown how any revisiting of tenure recommendation impaired his rights to teach during the term of his contract, and Olson has not provided any authority equating the denial of tenure with a breach of contract. We will not overturn the summary judgment and dismissal of the breach of contract claim.

## III.

Olson also contends that ISU breached an implied covenant of good faith and fair dealing by choosing not to renew his contract and denying him tenure as a means of disciplining him for activities deemed to be insubordination. He argues that questions of fact exists—precluding summary judgment—as to whether the finding of insubordination was erroneous and whether dismissal was an appropriate form of discipline.

The rules of the State Board of Education, including provisions regarding notice of nonrenewal of a contract of a nontenured faculty member, are an integral part of Olson's one-year contract. The pertinent provision of the rules, IDAPA 08.00. B.4,2,3.a, provides:

Reasons for recommending nonrenewal need not be stated. However, the Board recognizes that while nonrenewal without cause is its legal right, still nonrenewal

may impose a severe economic personal loss on an employee. While it is unlikely that an employee would not have actual notice of the reasons for nonrenewal, the Board authorizes each ... school ... electing to do so, to give to the employee a written statement of the reasons for nonrenewal. It is not the intention of the Board, however, to convert thereby nonrenewal of a fixed-term contract to dismissal for cause. . . .

ISU, therefore, was authorized not to renew Olson's contract, with or without cause. The letter advising Olson of the nonrenewal of his contract did not specify any reasons for nonrenewal. Having previously determined that Olson had received all of the due process protections to which he was entitled, we hold that Olson's challenge to the merits of the nonrenewal of his contract does not state a claim upon which relief can be granted. Furthermore, express contract language authorizing termination is not overridden by an implied covenant of good faith and fair dealing which would supplant the express language of the contract and permit termination only upon a showing of good cause. *Clement v. Farmers Insurance Exchange*, 115 Idaho 298, 766 P.2d 768 (1988). *See also Hughes v. Idaho State University*, 122 Idaho 435, 835 P.2d 670 (Ct.App.1992). We therefore hold that summary judgment was proper with regard to the breach of an implied covenant of good faith.

### IV.

■ Finally, Olson contests the district court's conclusion in its order granting summary judgment that Olson was not deprived of the equal protection of the law in the nonrenewal of his contract and the denial of tenure. Olson asserts that ISU should have conducted disciplinary proceedings for all of the parties who participated in the unauthorized evaluation, where he could have answered the allegations against him, rather than single him out for discipline by the nonrenewal of his contract. In effect, this issue is but another assault on the merits of the nonrenewal of Olson's contract, which we have held was unavailable to Olson. Similarly, a right to a hearing on a disciplinary

question has been conferred upon tenured faculty only, (Faculty/Staff Handbook Point 4, Section V–C–1.a) and Olson has presented us with no authority holding otherwise. We are not persuaded that the district court's resolution of Olson's equal protection claim was in error.

### V.

■ ISU has requested an award of fees under I.C. § 12–121, urging that Olson's appeal comes within the standard outlined in *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). Our conclusion upon review of the record is that Olson has presented no persuasive argument that the trial court misapplied the law and, in particular, made no attempt to explain or apply *Loebeck*, which is the current status of the law in Idaho with respect to nonrenewal of contracts of nontenured faculty employees. We award fees to ISU.

### CONCLUSION

We affirm the order of the district court granting summary judgment in favor of ISU. Costs and attorney fees are awarded to ISU.

WALTERS, C.J., and WOOD, J., pro tem., concur.