104 P.3d 946

Shirley HUYETT and Ernie Huyett,
Plaintiffs–Appellants,

v.

IDAHO STATE UNIVERSITY, Idaho
State Board of Education, and Howard
Gauthier, acting in his official capacity,
Defendants–Respondents.

No. 30119.

Supreme Court of Idaho,
Idaho Falls, September 2004 Term.

Dec. 7, 2004.

Steven V. Richert, Pocatello, for appellant.

Racine, Olson, Nye, Budge & Bailey, Chtd., Boise, for respondents. David E. Alexander argued.

SCHROEDER, Chief Justice.

Shirley Huyett was employed as a coach at Idaho State University. She claims that the University breached a three year employment contract. The University denies that a contract existed. The district court granted summary judgment in favor of ISU. Huyett appeals. The decision of the district court is affirmed.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Shirley Huyett (Huyett), was hired by Idaho State University acting through Howard Gauthier (ISU) to serve as head coach of the women's basketball team on June 29, 2001. On this day, Gauthier sent Huyett a letter setting forth terms relating to her one-year employment as head coach. Huyett returned a copy of this letter with her signed assent to the terms indicated in this letter. In a telephone call between Huyett and Gauthier later that day Huyett expressed her desire for a multi-year employment contract. Gauthier made vague references to the possibility of such a contract after Huyett had begun work at the university. Huyett began as head coach of the ISU women's basketball team in July of 2001. Shortly following her employment she was asked to sign a number of forms to complete her payroll paperwork with the university. One of these forms was listed as an "Employment Contract" and con-

tained language indicating that Huyett's employment was subject to the terms and conditions of the Rules and Governing Policies of the Idaho State Board of Education. This document noted that Huyett's duties were subject to reassignment by the university at any time.

During Huyett's one-year employment term, negotiations for a multi-year contract took place between Huyett and ISU. ISU prepared a draft three-year employment contract in October of 2001. Prior to either party signing the contract, ISU rescinded the draft and placed Huyett on administrative leave. Huyett filed suit in district court alleging, among other things, breach of an express or implied contract for multi-year employment and a procedural due process violation based on deprivation of her liberty and property interests associated with continued employment. The district court granted ISU's motion for summary judgment, holding that the creation of a multi-year employment contract required prior approval by the Board of Education (Board) and that no such approval was given. The district court also determined that absent a multi-year contract for employment, Huyett did not have a protected liberty or property interest.

Huyett appealed, arguing that the district court erred in applying IDAPA Personnel Rule 08.01.02.103.02.c rather than a Board of Education policy provision to determine whether prior approval by the Board of Education was required to create a multi-year employment contract. She asserts this error led the court to improperly conclude no multi-year contract existed between the parties and that she did not have a liberty or property interest from which to assert due process claims.

## II.

### STANDARD OF REVIEW

Review by the Supreme Court of an entry of summary judgment is the same as that required by the district court when ruling on the motion. *Friel v. Boise City Hous. Auth.,* 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). A district court determines a motion for summary judgment based on whether there are any genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c)(2004). *Id.* In determining whether there are genuine issues of material fact the court reviews all evidence in the light most favorable to the non-moving party. I.R.C.P. 56(c); *Smith v. Idaho State Univ. Fed. Credit Union,* 114 Idaho 680, 684, 760 P.2d 19, 23 (1988). If the evidence shows no disputed issues of material fact, what remains is a question of law over which the appellate court exercises free review. *Sacred Heart Med. Ctr. v. Boundary County,* 138 Idaho 534, 535, 66 P.3d 238, 239 (2003). Summary judgment should be denied if the record contains conflicting inferences or where reasonable minds might reach different conclusions. *Olson v. Idaho State Univ.,* 125 Idaho 177, 179, 868 P.2d 505, 507 (Ct. App.1994).

## III.

### NO BINDING MULTI–YEAR CONTRACT WAS FORMED

#### A. Statute of Frauds

No written multi-year contract was signed by the parties. Idaho Code § 9–505 prevents the enforcement of a contract that cannot be performed in less than a year unless the contract is evidenced by a signed writing of the parties or there is an existing circumstance that removes the case from the application of the Statute of Frauds. I.C. § 9–505 (2004). ISU argues on appeal that a three-year contract cannot be performed within one year, and, as a consequence, any agreement for a three year contract is unenforceable. On its face that would appear to be the case. However, ISU did not plead the Statute of Frauds in the district court. Consequently, Huyett was not given the opportunity to present any facts or arguments that might avoid the effect of the Statute of Frauds, and the district court was not called upon to rule on this issue. Therefore, it is necessary to address the issues as presented to the district court.

### B. ISU's Authority

■ For an agent to bind a principal to a third party in contract the agent must have actual or apparent authority. *Podolan v. Idaho Legal Aid Servs., Inc.*, 123 Idaho 937, 944, 854 P.2d 280, 287 (Ct.App.1993). Actual authority may be either express or implied. *Landvik by Landvik v. Herbert*, 130 Idaho 54, 58, 936 P.2d 697, 701 (Ct.App.1997). Express authority occurs when a principal explicitly authorizes an agent to act on the principal's behalf. Implied authority derives from those actions necessary to accomplish an act expressly authorized. *Id.* Apparent authority occurs when a principal by words or actions voluntarily places an agent in such a position that an ordinary person of business prudence would believe the agent is acting pursuant to existing authority. *Id.* at 59, 936 P.2d 697. A court may make a finding of apparent authority to protect third parties but only where the third party was not on notice of the scope of the agent's actual authority. *Thomson v. Sunny Ridge Vill. P'ship*, 118 Idaho 330, 332, 796 P.2d 539, 541 (Ct.App.1990).

Idaho State Board of Education, Governing Policy and Procedures, section II, subsection H governs execution of multi-year employment contracts between universities and head coaches. The policy provides that:

> The chief executive officer of an institution is authorized to enter *into* a contract for the services of a head coach or athletic director with that institution for a term of more than one (1) year, but not more than five (5) years, subject to the approval by the Board of the terms, conditions, and compensation thereunder. . . .

Idaho State Board of Education, Governing Policy and Procedures, section II, subsection H, IDAPA Personnel Rule 08.01.02.103.02.c (repealed effective July 1, 2001)(emphasis added). IDAPA governed execution of multi-year employment contracts with non-classified employees of a university prior to its repeal. IDAPA Personnel Rule 08.01.02.103.02.c states that, "[n]o contract of employment with [non-tenured or non-classified employees] may exceed one (1) year without prior approval of the Board. Em-ployment beyond the contract period may not be legally presumed." IDAPA.

■ IDAPA rules and regulations are traditionally afforded the same effect of law as statutes. *Roeder Holdings, L.L.C. v. Bd. of Equalization of Ada County*, 136 Idaho 809, 813, 41 P.3d 237, 241 (2001). The legal weight attributed to Board of Education policies has never been fully articulated. Statutory language is to be given its plain, obvious and rational meaning. *Grand Canyon Dories v. Idaho State Tax Comm'n*, 124 Idaho 1, 3, 855 P.2d 462, 463 (1993). Where two statutes apply to the same subject matter they are to be construed consistent with one another where possible, otherwise the more specific statute will govern. *Id.* at 3, 855 P.2d at 463; *State v. Barnes*, 133 Idaho 378, 382, 987 P.2d 290, 292 (1999).

Based on IDAPA and the Board Policy, the Board of Education is the principal in this case. The Board carries all the authority to authorize funding and approve all contracts for employment. Likewise, the university itself and its employees are agents of the Board.

At the time of Huyett's initial hire in June of 2001, IDAPA was the more specific and controlling rule over Huyett's contract. Based on the plain meaning of this rule, prior Board approval was required for ISU to have authority to enter into a multi-year employment contract with Huyett. In *Leon v. Boise State Univ.*, 125 Idaho 365, 870 P.2d 1324 (1994), the Court held that an BSU professor's negotiations for tenure were controlled by IDAPA regulations. *Leon*, 125 Idaho at 369, 870 P.2d at 1328. These regulations required prior Board approval for the professor's tenure contract to become effective. The Court of Appeals further held in *Totman v. E. Idaho Technical Coll.*, 129 Idaho 714, 931 P.2d 1232 (Ct.App.1997), that a supervisor's representations to a teacher that she could not be terminated other than for cause, contrary to IDAPA regulations, was an unenforceable promise. *Totman*, 129 Idaho at 717–18, 931 P.2d at 1235–36. Both *Leon* and *Totman* indicate that university employees are deemed to know IDAPA and its effect on their employment contracts. Similar to *Leon* and *Totman*, Huyett was deemed to know

the law and effect of IDAPA over her negotiations for a multi-year employment contract with ISU. Because she is deemed to have had notice of this requirement she may not claim the university had apparent authority to enter into a multi-year contract. Additionally, IDAPA's requirement of Board approval prior to execution of multi-year employment contracts prevents the university from having actual authority to enter into a three-year head coaching contract with Huyett. There is no evidence in the record that the Board granted prior approval of a multi-year employment contract with Huyett. The district court properly held ISU lacked actual and apparent authority in June.

Following IDAPA's repeal on July 1, 2001, ISU again did not have actual or apparent authority to enter into a multi-year agreement with Huyett. It is appropriate to use rules of statutory construction in interpreting the Board policy. Statutory language is to be interpreted based on its plain meaning. *Grand Canyon Dories,* 124 Idaho at 3, 855 P.2d at 463. Where statutory language is clear and unambiguous, statutory construction is unnecessary and the court need only apply the statute. *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.,* 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995). Ambiguity is not established based solely upon differing interpretations. *Rim View Trout Co. v. Higginson,* 121 Idaho 819, 823, 828 P.2d 848, 852 (1992). Webster's Dictionary II defines the word "subject" to include meaning "contingent." This definition of the word "subject" is then followed by an explanatory phrase "subject to approval," the exact phrase used in the Board Policy. WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (1984). The plain meaning of the phrase "subject to approval" means the terms and conditions of ISU's multi-year contracts with head coaches are contingent upon approval by the Board.

An enforceable contract requires "distinct understanding common to both parties". *Hoffman v. S V Co. Inc.,* 102 Idaho 187, 189, 628 P.2d 218, 220 (1981). Acceptance of an offer must be unequivocal and identical to the offer made. *Turner v. Mendenhall,* 95 Idaho 426, 429, 510 P.2d 490, 493 (1973). "The minds of the parties must meet as to all terms before a contract." *Id.* Proof of a meeting of the minds requires evidence of mutual understanding as to all the terms before a contract is formed. *Id.; Thomas v. Schmelzer,* 118 Idaho 353, 356, 796 P.2d 1026, 1029 (1990). The President of ISU had authority to negotiate a multi-year employment contract, but the material terms of the contract were always subject to Board approval. This was expressly stated in Huyett's draft contract. Absent that approval there is no contract.

The purpose of the Board of Education policy was not intended to change the essential procedures for execution of multi-year agreements with head coaches from the procedures established in IDAPA. Words and phrases of a statute are to be construed according to their context. *Grand Canyon Dories,* 124 Idaho at 5, 855 P.2d at 466. In a notice issued by the Board of Education regarding the proposed repeal of IDAPA, the Board indicated the repeal was being considered because the "[r]egulations related to personnel of the Board's agencies and institutions are provided in the Board's Governing Policies and Procedures" and that these rules could therefore be consolidated into one governing document which would allow the Board more flexibility. Records of the IDAPA repeal hearings specifically noted changes between IDAPA and the Board's Governing Policies and Procedures, including that "overall authority for personnel is delegated to the chief executive officers, except where specifically reserved by the Board." A table summary of Board Approval Requirements indicated that the IDAPA provisions relating to head coaches and athletic directors would remain the same with only the "added requirement to use the Board approved model contract as the form for establishing contracts." While some changes were made between IDAPA and the Board of Education policy, those changes did not give authority on the part of chief executives to bind universities to multi-year employment contracts with head coaches.

Finally, ISU did not have apparent authority to bind the Board to a multi-year

contract with Huyett. Apparent authority is based on the representations from the principal to a third party. The Board at no time indicated the October draft contract was anything other than a draft. The Board Policy makes clear that university Presidents were given only the authority to negotiate terms and not to fully assent on behalf of the Board. ISU lacked actual or apparent authority to bind the University to a multi-year employment contract with Huyett prior to and following the repeal of IDAPA. Summary judgment in favor of ISU was proper.

## IV.

### THERE WAS NO BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

 An implied covenant of good faith and fair dealing adheres to all contracts. *Record Steel & Constr. v. Martel Const., Inc.,* 129 Idaho 288, 292, 923 P.2d 995, 999 (Ct. App.1996). The implied covenant of good faith and fair dealing obligates parties to cooperate with one another and to perform the obligations imposed by their agreements. *Id.* Express terms of a contract may not be overridden by those implied from the covenant of good faith and fair dealing. *See Clement v. Farmers Ins. Exch.,* 115 Idaho 298, 300, 766 P.2d 768, 770 (1988); *Olson,* 125 Idaho at 182, 868 P.2d at 510.

No multi-year contract existed between Huyett and ISU. The university could not have breached a covenant of good faith or fair dealing with respect to a non-existent contract. The only contract that was formed was Huyett's one-year contract. ISU performed its duties as set out under this agreement. The university reserved the right to reassign Huyett's duties at any time and within its discretion. Because the express provisions of Huyett's contract authorized her administrative leave, there is no evidence on the record of a breach of the covenant of good faith and fair dealing by ISU of the one year contract. The district court properly determined ISU did not breach a covenant of good faith and fair dealing.

## V.

### THERE IS NO CONSTITUTIONALLY PROTECTED PROPERTY INTEREST

 Without a multi-year employment agreement, Huyett has no viable claim to a protected property interest in employment with ISU beyond that of her one-year contract. *Loebeck v. Idaho State Bd. of Educ.,* 96 Idaho 459, 530 P.2d 1149 (1975) found that:

> [n]othing in the terms of the year to year contracts entered into between appellant and the University or in any state statute or university rule or policy conferred on appellant any legitimate entitlement to tenure. She had nothing more than a hope of receiving tenure. "That hope is not a property right and frustration of such a hope does not trigger the right to a hearing ..."

*Id.,* quoting *Perrin v. Oregon State Bd. of Educ.,* 15 Or.App. 268, 272, 515 P.2d 409, 411 (1973), *cert. den.* 417 U.S. 950, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974). Huyett had only a one-year contract for employment with ISU and a hope that this contract would parlay into a future three-year head coaching contract. Without a multi-year contract Huyett's expectation is insufficient to establish a protected property interest. The district court properly concluded ISU did not deprive Huyett of due process in a property interest.

## VI.

### THERE WAS NO BREACH OF A CONSTITUTIONALLY PROTECTED LIBERTY INTEREST

 Idaho has primarily relied on the Supreme Court's holding in *Bd. of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) to describe the amount of process due where there is a deprivation of a liberty interest associated with employment. *See Olson,* 125 Idaho at 180, 868 P.2d at 508. *Roth* determined that due process was required where "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing ..." *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558. *Olson* used this standard to find that where no charge had been made against a university professor with regard to non-re-

newal of his contract, the professor was not deprived of a liberty interest. *Olson,* 125 Idaho at 180, 868 P.2d at 508. Some lasting stigma to the professor's reputation or standing in the community was required for the court to find the deprivation of a liberty interest. *Id.* ISU did not record, note or suggest any reason for placing Huyett on administrative leave and reassigning her duties. Her one-year contract was not subject to automatic renewal, and ISU was free to re-assign her duties at any time. Although Huyett has alleged that placing her on administrative leave marred her coaching reputation, that alone is not sufficient to raise a due process claim. *See Loebeck,* 96 Idaho at 461, 530 P.2d at 1151. The district court properly held Huyett was not denied due process in a liberty interest.

## VII.

### ANY DEFECT IN NOTICE WAS CURED

 Where a contract is for a fixed period, timely notice of non-renewal is traditionally the only process due a non-tenured faculty member of a university, unless otherwise expressly agreed by the parties. *Totman,* 129 Idaho at 718, 931 P.2d at 1236. ISU Faculty/Staff Handbook, Part 4, Section IV.c.2 states that non-classified employees are entitled to notice of non-renewal of an employment contract at least sixty days prior to the end of an appointed term. Additionally, Board of Education policies specify that head coaches are considered a separate subset of nonclassified employees. Board of Education Governing Policies and Procedures, Section II.D.2.e. Failure to give timely notice of non-renewal of a non-classified employee's contract will result in the extension of the contract to the necessary number of days to provide a full sixty days notice. Board of Education Governing Policies and Procedures, Section II.F.5.a.

Huyett received a letter indicating her one-year contract would not be renewed for the following year on March 4, 2002. The letter contained an error in describing the type of employee Huyett was to the university, and subsequent correction was made. This correction provided Huyett with adequate notice of non-renewal of her contract according to the Board's remedy policy.

Huyett claims that there is a factual dispute regarding whether ISU's error was truly clerical and whether she was in fact a non-classified employee. There is no evidence on the record to establish that Huyett was anything other than a non-classified employee. She has stipulated in her complaint that she was hired as a head coach for the university. Board policies specifically state that head coaches are considered non-classified employees. The July 17 "Employment Contract", signed by Huyett notes that she is listed as a non-classified employee. The district court properly concluded Huyett was a non-classified employee. Moreover, the error made in the notice was minimal as the substantive law regarding notice was the same, despite Huyett's misclassification. Thus, the district court did not err in finding the error in Huyett's notice was merely clerical. ISU's subsequent notice of non-renewal of Huyett's contract was sufficient.

## VIII.

### ISU IS ENTITLED TO ATTORNEY FEES PURSUANT TO I.C. § 12-120(3)

 Idaho Code 12-120(3) allows for the reasonable award of attorney fees to the prevailing party of a civil appeal involving a contract for services. I.C. § 12-120(3)(2004). Where a party alleges the existence of a contractual relationship of a type embraced by I.C. § 12-120(3), that claim triggers the application of the statute, and the prevailing party may recover fees even though no liability under a contract was established. *See Farmers Nat'l Bank v. Shirey,* 126 Idaho 63, 73, 878 P.2d 762, 772 (1994). ISU is entitled to attorney fees.

## IX.

### CONCLUSION

The decision of the district court is affirmed. ISU is awarded costs and attorney fees.

Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.