# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34827

STEPHEN BUSHI, M.D.,

    Plaintiff-Appellant,

v.

SAGE HEALTH CARE, PLLC, an Idaho limited liability company; CHARLES C. NOVAK, M.D.; DAVID A. KENT, M.D.; and ROBERTO NEGRON, M.D.,

    Defendants-Respondents.

\----------------------------------------------------------

SAGE HEALTH CARE, PLLC, an Idaho limited liability company; CHARLES C. NOVAK, M.D.; DAVID A. KENT, M.D.; and ROBERTO NEGRON, M.D.,

    Counterclaimants-Respondents,

v.

STEPHEN BUSHI, M.D.,

    Counterdefendant-Appellant.

Boise, January 2009 Term

2009 Opinion No. 30

Filed: March 4, 2009

Stephen Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Honorable Cheri C. Copsey, District Judge.

The decision of the district court is affirmed in part, vacated in part, and remanded for further proceedings.

Hawley, Troxell, Ennis & Hawley, Boise, for appellant. Steven Schossberger argued.

Capitol Law Group, Boise, and Munther Goodrum Sperry, Boise, for respondents. Forrest Goodrum argued.

- 1 -

HORTON, Justice

This is an appeal from a district court's grant of summary judgment in favor of Sage Health Care, PLLC (Sage), Charles C. Novak, M.D., David A. Kent, M.D., and Roberto Negron, M.D. (collectively referred to as Respondents). Stephen Bushi, M.D., (Bushi) appeals the district court's summary judgment ruling that Respondents acted properly in terminating Bushi's membership in Sage and its award of attorney fees to Respondents. We affirm in part, vacate in part, and remand this case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1994, licensed psychiatrists, Charles C. Novak, Stephen T. Bushi, David A. Kent, and Cantril T. Nielsen, formed The Sage Group, LLC, under the Idaho Limited Liability Act—I.C. §§ 53-601 *et seq*. In 1996, the members changed the limited liability company's name to Sage Behavioral Health Care, LLC. In 1997, the members again changed the LLC's name to Sage Health Care, PLLC. Each of the original members contributed $2,000 and held a 25% interest in the LLC. Dr. Nielsen subsequently withdrew from Sage, and Dr. Roberto Negron acquired a 25% ownership interest in Sage.

All the members of Sage were signatories to the operating agreement, including amendments. The agreement vested equal management rights in the members. It provided that to amend its terms, consent of all but one of the members was required. It also addressed the grounds for dissociation of its members. Mandatory dissociation would occur if a member withdrew with the consent of the majority of the remaining members or with the death or decree of incompetency of a member. A member could be dissociated by a majority vote of the other members upon the happening of the following: bankruptcy of the member; attachment or levy upon the member's interest; the member's loss of professional license; a finding by the member's professional society that the member is guilty of an ethical violation; the member's inability to obtain professional liability insurance; or the member's conviction for a felony. The operating agreement also provided a calculation for determining the value of a member's interest upon dissociation.

Starting around 2002, Bushi began to date a nurse practitioner employed at Sage. This was not prohibited under the terms of the operating agreement; however, because the other members had concerns about potential liability stemming from the relationship, Sage arranged for Bushi to have no role in supervising the nurse practitioner.

In July 2003, Sage obtained a business line of credit loan from Wells Fargo Bank, which was intended to serve as a source of liquidity for Sage if and when it was needed. Sage never used the line of credit and never approved its use by any member. In October 2005, Respondents received correspondence from Wells Fargo indicating that nearly $45,000 had been borrowed on the line of credit at 15.5% interest. Respondents learned that Bushi had applied for and received funds on Sage's line of credit based solely on his signature; Respondents had not consented to or known about this extension of credit. The name on the line of credit account was listed as "Sage Health Care, PLLC Stephen Bushi," and Bushi maintains that he believed that this line of credit was his personal line of credit, not a business line of credit. After Respondents confronted him, Bushi admitted he had borrowed the funds on the line of credit and used them for his personal expenses. Respondents demanded he repay the funds to Wells Fargo.

At a members' meeting on October 27, 2005, Respondents, according to Bushi, informed him they wanted him out as a member of Sage because he was dating the nurse practitioner. The second item on the agenda for that meeting states "discuss NP." After this meeting, concerned about his future with Sage, Bushi joined another psychiatry group in November 2005. Bushi thought he was within his rights under the operating agreement to join the competing group. The minutes from a December 8, 2005 members' meeting reflect that Respondents voted to deny Bushi profit sharing in 2006, and that "one reason for him not being involved with the profit sharing was due to his connection with [Sage's] competitor." At this time, Respondents stopped scheduling Bushi to provide services for various Sage contracts in which he had previously been participating.

At that same December 8, 2005 meeting, Respondents also offered to buy out Bushi's share in Sage for a figure prepared by Sage's accountant and told Bushi he needed to decide whether to accept the offer by January 2006. Bushi thought the offer was "ridiculous" and told Respondents he would not comment on any amount until he had spoken to his attorney.

At a members' meeting on January 17, 2006, Respondents presented Bushi with a non-compete agreement that would have prohibited him from participating in any practice competing against them. In return, Bushi would be paid $15,000 for his withdrawal and dissociation from Sage and relinquishment of any and all rights of ownership in Sage. Following this meeting, Bushi's counsel wrote a letter to Respondents rejecting their offer and explaining that Bushi

would continue as a member and retain his rights, including his right to a share in the profits of Sage, until a mutually satisfactory agreement had been reached.

On January 24, 2006, Respondents served Bushi notice that a members' meeting would be held on January 30, 2006. The notice stated that three items were on the agenda: an amendment to the operating agreement; following the amendment, the termination of the membership of a member pursuant to the operating agreement as amended; and continuation of the business. Bushi's counsel appeared at the meeting by proxy in Bushi's absence. At the meeting, Respondents voted to amend the operating agreement to require mandatory dissociation of a member upon an affirmative vote by all but one of the members. Following the amendment, Respondents voted—with Bushi dissenting—to dissociate Bushi, effective immediately. Applying the formula in the operating agreement, Sage's accountant determined that the value of Bushi's membership interest as of January 30, 2006 was $11,245.

In a letter dated July 11, 2006, Respondents sent two checks to Bushi, one for $11,245 (for his membership interest) and one for $5,138.27 (for his 2006 profit share and for the remainder of his 2005 profit share, the first part of which Bushi had directed be put towards paying off the Wells Fargo credit line). These were tendered as full payment upon Bushi's dissociation. By letter dated July 18, 2006, Bushi's attorney refused tender of the two checks and returned them.

As of June 6, 2006, Bushi had not paid off the Wells Fargo credit line and Sage continued to be liable for that loan. Respondents filed a civil action against Bushi in the Fourth Judicial District. After the suit was filed, Bushi paid all amounts due and owing to Wells Fargo, and Respondents dismissed the lawsuit.

Bushi filed the instant case on October 19, 2006, asserting claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of operating agreement, and seeking declaratory relief and an equitable accounting. Respondents filed an answer and counterclaim, asserting in the first count of the counterclaim that Bushi breached the operating agreement through his use of the Wells Fargo credit line and seeking in the second count declaratory relief related to the validity of their actions in amending the operating agreement.

Bushi moved to dismiss count one of the counterclaim, which the district court granted on grounds that the claim was moot. This decision has not been appealed. Between the time

Bushi filed the motion to dismiss and when the court granted it, Respondents filed a motion for summary judgment. As to the viable portion of the counterclaim that remained following dismissal of the first count, Respondents asked the court to grant summary judgment as follows: declaring that Bushi's membership in Sage was properly terminated under the terms of the operating agreement as amended and the Idaho Limited Liability Company Act; declaring that the value of Bushi's membership was properly determined under the terms of the operating agreement and in compliance with the terms of the Idaho Limited Liability Company Act; declaring that the profits of Sage were properly determined and distributed among the members in accordance with the signed written agreements of the members regarding distribution of profits; and awarding attorney fees and costs to Respondents in the action as a prevailing party.

The district court granted Respondents' motion for summary judgment, finding that: Respondents did not breach the contract with Bushi by amending the operating agreement to allow his involuntary dissociation; Bushi's allegations of breach of the covenant of good faith and fair dealing did not create an issue of material fact that precluded summary judgment; there were no issues of material fact precluding summary judgment on Bushi's claim for breach of fiduciary duty; and the valuation provisions upon dissociation were clear and unambiguous and Sage's valuation followed those provisions. The court awarded Respondents $73,233.19 in attorney fees pursuant to I.C. § 12-120(3) as well as $5,665 in discretionary costs for expert witness fees.

Bushi timely appealed the district court's decision. Respondents ask for attorney fees on appeal.

## II. STANDARD OF REVIEW

When this Court reviews a trial court's decision on summary judgment, it employs the same standard as that properly employed by the trial court when originally ruling on the motion. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146, (1997) (citing *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994)). Disputed facts are construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the non-moving party. *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006). "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

## III. ANALYSIS

Bushi challenges the district court's grant of summary judgment as to his claims for breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty. Bushi also asks that we reverse the district court's award of attorney fees and costs to Respondents. We affirm the district court's grant of summary judgment regarding Bushi's claim for breach of the implied covenant of good faith and fair dealing, vacate the district court's grant of summary judgment regarding Bushi's claim for breach of fiduciary duty, vacate the district court's award of attorney fees below, and decline to award attorney fees on appeal.

**A.   The district court did not err when it granted summary judgment in favor of Respondents on Bushi's claim for breach of the implied covenant of good faith and fair dealing.**

The district court correctly decided that Respondents did not breach the implied covenant of good faith and fair dealing. The court noted that "[t]he implied covenant of good faith and fair dealing arises only regarding terms agreed to by the parties." *Taylor v. Browning*, 129 Idaho 483, 491, 927 P.2d 873, 881 (1996) (citing *Idaho First Nat'l Bank*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991)). Furthermore:

> No covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties. The covenant requires "that the parties perform in good faith the obligations imposed by their agreement," and a violation of the covenant occurs only when "either party . . . violates, nullifies or significantly impairs any benefit of the . . . contract . . . ."

*Idaho First Nat'l Bank v. Bliss Valley Foods*, 121 Idaho at 288, 824 P.2d at 863 (citations omitted). Bushi can identify no specific term within the operating agreement that Respondents breached by amending the agreement in order to involuntarily dissociate him.

Instead, Bushi argues that he was denied the benefits of the original operating agreement, which did not expressly allow the other members of Sage to involuntarily dissociate him. In response to this contention, the district court noted that:

> [W]hile Bushi claims he "relied" on the then existing dissociation provisions which the Members changed . . . the Court finds that the Operating Agreement also specifically provides "[n]o Member shall have any vested rights in the Company Agreement which may not be modified through an amendment to the Company Agreement." Article XIV, Section 1. Therefore, such reliance, to the extent reasonable at all, was simply not justified and his argument is specious.

The court reiterated that, in any case, "contract terms are <u>not</u> overridden by the implied covenant of good faith and fair dealing." (Citing *Clement v. Farmers Ins. Exch.*, 115 Idaho 298, 300, 766 P.2d 768, 770 (1988); *Olson v. Idaho State Univ.*, 125 Idaho 177, 182, 868 P.2d 505, 510 (Ct. App. 1994)) (emphasis in original).

We agree with the district court. Bushi cannot show that Respondents violated, nullified, or significantly impaired the operating agreement, and thus his contention that Respondents acted in breach of the covenant of good faith and fair dealing fails to create an issue of material fact precluding summary judgment. Bushi also argues that Respondents breached the covenant by voting to deny Bushi profit sharing in 2006. Despite their vote, Respondents did tender to Bushi his share of the 2006 profits, and Bushi has not alleged any further contract damages as a result of the vote. Thus, this claim also fails to preclude summary judgment. Consequently, we affirm the district court's grant of summary judgment regarding Bushi's assertion that Respondents breached the implied covenant of good faith and fair dealing.

**B. The district court erred by concluding that there were no genuine issues of material fact precluding summary judgment on Bushi's claim for breach of fiduciary duty.**

In order "[t]o establish a claim for breach of fiduciary duty, [a] plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Tolley v. THI Co.*, 140 Idaho 253, 261, 92 P.3d 503, 511 (2004) (citation omitted). Respondents do not contend that they did not owe Bushi fiduciary duties; rather, they assert that they did not breach those duties. Although this is not a disputed point of law, this Court has not yet directly addressed the question of whether members of a limited liability company owe each other fiduciary duties. Accordingly, we address this threshold question before considering whether there is a genuine issue of material fact whether there was a breach of Respondents' fiduciary duties to Bushi.

Idaho's original act governing limited liability companies, the Idaho Limited Liability Company Act, is codified at I.C. §§ 53-601 *et seq.*[1] Idaho Code § 53-622 identifies certain specific duties that members of an LLC owe to one another; however, it does not use the term "fiduciary," does not state that it is an exhaustive list of duties members owe one another, and does not address the conduct at issue in this case. In 2008, the legislature enacted comprehensive amendments to the statutory scheme through the Idaho Uniform Limited Liability Company Act,

---

[1] The legislature repealed the Idaho Limited Liability Company Act effective July 1, 2010. 2008 S.L. ch. 176, §§ 5,6, p. 522.

I.C. §§ 30-6-101 *et seq.* 2008 S.L. ch. 176, § 1, p. 480. The new act states unequivocally that members of an LLC owe each other the fiduciary duties of loyalty and care. I.C. § 30-6-409(1). Until July 1, 2010, the original act governs all limited liability companies formed prior to July 1, 2008 that do not elect to be subject to the new act. I.C. § 30-6-1104. Sage was formed prior to July 1, 2008, and this litigation began prior to the enactment of the new act. Thus, the original act governs this case.

While the original act does not expressly state that members of an LLC owe one another fiduciary duties, it does state that "[u]nless displaced by particular provisions of this chapter, the principles of law and equity supplement the provisions of this chapter." I.C. § 53-668(2). It appears that the majority of courts considering the issue have concluded that members of an LLC owe one another the fiduciary duties of trust and loyalty. *See* NTS Am. Jur. 2d Limited Liability Companies § 11 (2008) (citing *McConnell v. Hunt Sports Ent.*, 725 N.E.2d 1193 (Ohio App. 1999) (holding a limited liability company, like a partnership, involves a fiduciary relationship); *Purcell v. Southern Hills Investments, LLC*, 847 N.E.2d 991 (Ind. App. 2006) (holding that common law fiduciary duties, similar to the ones imposed on partnerships and closely-held corporations, are applicable to Indiana LLCs)). We conclude that, under Idaho's original LLC act, members of an LLC owe one another fiduciary duties.

Generally, whether a fiduciary has breached his duty is a question of fact. *See First Bank & Trust of Idaho v. Jones*, 111 Idaho 481, 484, 725 P.2d 186, 189 (Ct. App. 1986) (holding question of fact precluding summary judgment existed as to whether there was breach of partners' fiduciary duties regarding status of certain property as partnership property); *Musselman v. Southwinds Realty*, 704 P.2d 814, 816 (Ariz. App. 1985) (noting rule of law that whether a fiduciary duty has been breached is a question of fact for the jury).

In addressing Bushi's claim for breach of fiduciary duty, the district court stated: "Whether the other Sage Health Care Members owed a fiduciary duty to Bushi *under these circumstances and with respect to the buy-out offers* is debatable." (Emphasis added). By this statement, the district court seems to have been acknowledging that the question of whether Respondents breached their fiduciary duties to Bushi is a question of fact and that the facts surrounding Bushi's termination are disputed. The court went on to state however that "breach of fiduciary duty is a tort claim and Bushi failed to introduce any case law that stands for the proposition that a breach of fiduciary duty precludes enforcement of a contract." This latter

statement appears to reflect the trial court's view that summary judgment on this issue was appropriate as a matter of law, despite the existence of disputed facts, because those facts were not material in light of the legal conclusion. This was error.

While it is true that generally a member of an LLC is not liable to the LLC or any other member for actions taken in compliance with the operating agreement, the member must have relied on the provisions of the agreement in good faith. *Schafer v. RMS Realty*, 741 N.E.2d 155, 175-76 (Ohio App. 2000). In *Schafer*, the Court of Appeals of Ohio considered whether Schafer, a minority partner in a realty partnership, had a claim for breach of fiduciary duty against the partnership and the other partners when, in compliance with the partnership agreement, the other partners issued a capital call that Schafer could not meet. *Id.* at 162. Schafer's failure to meet the call triggered a provision in the partnership agreement that diluted the interest of any partner who could not meet a call. *Id.* Schafer's interest decreased from twenty-five to nineteen percent pursuant to the dilution provision, and this result was, Schafer claimed, the true motivation for the call. *Id.*

Like Respondents, the partners in *Schafer* urged that no breach of fiduciary duty had occurred since their actions were taken in compliance with the partnership agreement. *Id.* at 175. The *Schafer* court began its analysis of this argument by looking to its earlier decision in *Leigh v. Crescent Square, Ltd.*, 608 N.E.2d 1166 (Ohio App. 1992), in which one partner claimed the other partners breached their fiduciary duties to him when they voted to expel him from the partnership without prior notice. *Id.* at 1167-68. The *Leigh* court held that the lack of notice of the ouster did not constitute a breach of fiduciary duty because the expulsion was not initiated in order for the remaining partners to extract financial gain. *Id.* at 1170. The *Schafer* court extrapolated from this holding that "whether a technical breach has occurred is not the sole consideration" because "actions taken in accordance with [an operating] agreement can still be a breach of fiduciary duty if [members] have improperly taken advantage of their position to obtain financial gain." 741 N.E.2d at 175.

The *Schafer* court then turned to a case in which action taken in accordance with an operating agreement did result in a breach of fiduciary duties. *Id.* at 177-78. In *Labovitz v. Dolan*, 545 N.E.2d 304 (Ill. App. 1989), the court held that a general partner who used economic coercion to make the limited partners sell their shares to him at a reduced price breached his

fiduciary duties to those partners, even though he acted in accord with the partnership agreement. *Id.* at 306. Specifically, the *Labovitz* court stated that:

> It is no answer to the claims that plaintiffs make in this case that partners have the right to establish among themselves their rights, duties and obligations, as though the exercise of that right releases, waives or delimits somehow the high fiduciary duty owed to them by the general partner-a gloss we do not find anywhere in our law. On the contrary, the fiduciary duty exists concurrently with the obligations set forth in the partnership agreement whether or not expressed therein.

*Id.* at 310. Applying this rule, the *Schafer* court affirmed the jury's finding that the other partners breached their fiduciary duties to Schafer when they caused his ownership interest to be diluted:

> [W]hile the partnership agreement allowed the partners to vote for capital calls "as required for the purposes of the partnership," the majority's ability in this regard was "encumbered by [the] supreme fiduciary duty of fairness, honesty, good faith, and loyalty" to their minority partner. *Labovitz,* 545 N.E.2d at 313.

741 N.E.2d at 179. Similarly, even if Respondents' actions in dissociating Bushi were technically in compliance with the terms of the operating agreement, this does not necessarily bar Bushi's claim for breach of fiduciary duty if those actions were improperly motivated.[2]

Respondents offer a number of reasons why they terminated Bushi, including: their concern that Bushi's romance could subject them to potential liability under federal law; their view that Bushi's association with a competitor of Sage breached the operating agreement; and, finally, the fact that Bushi ran up approximately $60,000 in debt on Sage's line of credit without the knowledge or authorization of the other members of Sage, also in breach of the operating agreement. Bushi, however, alleges that Respondents were motivated by financial gain. He points out that each member of Sage, in applying for the line of credit with Wells Fargo, valued his membership interest at $250,000. In contrast, Sage's accountant determined that Bushi's

---

[2] Respondents cite to *McConnell v. Hunt Sports Ent.*, 725 N.E.2d 1193 (Ohio App. 1999), for their argument that compliance with an agreement precludes a finding of breach of fiduciary duty. Respondents correctly note that in *McConnell* "the court held that there had been no breach of fiduciary duty because . . . [u]nder the operating agreement, the members were not prohibited from engaging in a venture that was competitive with the company's investing in . . . a national hockey league franchise." This holding does not defeat Bushi's claim that Respondents breached their fiduciary duties to him by terminating his membership in order to increase their individual interests in Sage. The operating agreement in *McConnell* specifically allowed the members to take the action complained of in that case. *Id.*, 725 N.E.2d at 1212 (holding that it could not be considered a breach of fiduciary duty, in and of itself, for a member of an LLC to compete against the LLC because the operating agreement allowed such competition). By contrast, there is no provision in the Sage agreement that authorizes removal of members in order to increase the value of the remaining members' interests in the LLC.

interest in Sage was $11,245 under the terms of the operating agreement governing dissociation of a member.

Drawing all reasonable inferences in Bushi's favor, this Court cannot conclude that there is no genuine issue of material fact as to Respondents' motivation in dissociating Bushi. A reasonable person could infer that Respondents acted in bad faith by removing Bushi from the LLC in order to advance their personal financial interests. If that were the case, Respondents would be liable to Bushi despite their technical compliance with the operating agreement. Accordingly, we vacate the district court's grant of summary judgment with respect to this issue and remand to the district court for further proceedings.

**C. The award of attorney fees below is vacated and no attorney fees are awarded on appeal.**

Because we vacate the district court's grant of summary judgment and remand for further proceedings with respect to Bushi's breach of fiduciary duty claim, Respondents can no longer be considered the prevailing party below. Thus, we vacate the district court's award of attorney fees.

We conclude that there is no prevailing party on appeal because we have affirmed the district court's grant of summary judgment as to Bushi's claim for breach of the implied covenant of good faith and fair dealing and vacated the district court's grant of summary judgment as to Bushi's claim for breach of fiduciary duties. Accordingly, we decline to award attorney fees or costs on appeal.

## IV. CONCLUSION

In light of the fact that Bushi is unable to point to any breach of the operating agreement, we affirm the district court's grant of summary judgment as to his claim of breach of the implied covenant of good faith and fair dealing. However, because Respondents, despite having technically complied with the operating agreement, may have acted in bad faith in terminating Bushi, we vacate the district court's grant of summary judgment to Respondents and remand for further proceedings on Bushi's claim of breach of fiduciary duty.[3] The district court's award of attorney fees is vacated. No attorney fees or costs are awarded on appeal.

---

[3] The district court found that, because Bushi had refused tender of his membership interest and outstanding share of profits as determined under the operating agreement, he suffered no damages. This is incorrect, and Respondents acknowledged at oral argument that barring a different outcome upon remand to the district court they must re-tender those funds to Bushi.

Justices BURDICK, W. JONES and Justice Pro Tem KIDWELL, **CONCUR**.

J. JONES, J., specially concurring.

I concur in the Court's opinion, particularly the Court's statement of the law. My concern relates to the substance of Bushi's claim for breach of fiduciary duty. In my estimation, Bushi barely cleared the hurdle for surviving summary judgment. The record contained a bare minimum of facts to back up Bushi's assertion that the other members of Sage took the action they did in order to obtain improper gains at his expense. It is somewhat difficult to overlook the fact that Bushi improperly took advantage of the company's line of credit for his personal benefit. On the other hand, Sage did not assign major importance to this fact as a ground for dissociating Bushi until well after the dissociation. In any event, I agree that there was just enough in the record to allow him to survive summary judgment, leaving it to the trier of fact to sort out these matters.